IHOP 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-556-CV





NEW BRAUNFELS FACTORY OUTLET CENTER, INC.,


EDWARD K. KOPPLOW, AND ROB EVERSBERG,



 APPELLANTS


vs.





IHOP REALTY CORP., JOHN BAIRD, AND J. KEN MASUDA,



 APPELLEES



 




FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT



NO. C91-0591C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING



 





 This is an appeal from a suit between the buyer and seller of real property for
reformation and construction of a restrictive covenant. Appellee, IHOP Realty Corp. ("IHOP"),
the buyer, contended that the restrictive covenant prohibited appellants, New Braunfels Factory
Outlet, Edward K. Kopplow, and Rob Eversberg (collectively "New Braunfels"), the sellers, from
selling a tract of land adjacent to IHOP's tract to Cracker Barrel Old Country Store ("Cracker
Barrel"). After a jury trial, the district court rendered judgment denying reformation, holding that
the restrictive covenant prohibited a sale to Cracker Barrel, and awarding attorney's fees to IHOP. 
New Braunfels appeals.



THE CONTROVERSY


 The origin of this dispute was IHOP's purchase from New Braunfels of a tract of
land to use for a restaurant operation. The land was part of a six-acre tract located on Interstate
35 and U.S. Highway 81 in New Braunfels, Texas. In 1989, Rob Eversberg and Ed Kopplow
formed New Braunfels Factory Outlet Center, Inc., with the goal of developing the entire tract
as a factory outlet store. Though the factory outlet project fell through, they continued to work
on developing the tract, sending letters promoting the site to several national restaurant chains. 
IHOP responded to such a letter, expressing interest in purchasing a portion of the tract. 
Negotiations between IHOP and New Braunfels began in April 1989.

 A significant part of the negotiations between IHOP and New Braunfels concerned
the degree to which New Braunfels and its successors would be restricted from using the balance
of the tract not sold to IHOP as a restaurant. In a letter of intent submitted to New Braunfels in
December 1989, IHOP initially proposed relatively strict restrictions that would have prohibited
New Braunfels from using, leasing or permitting others to use or lease the balance of the tract "for
any kind of restaurant operation, such as Denny's, Coco's, Allie's, Shoney's, Bob's Big Boy or
Baker's Square." (emphasis added). New Braunfels objected to the breadth of this restriction,
and altered the wording so that the restriction prohibited use only "for such kind of restaurant
operation as Denny's, Coco's, . . . ." (emphasis added). New Braunfels returned the letter of
intent to IHOP with these and other changes.

 After negotiating for several months, New Braunfels and IHOP settled on the
following prohibitive language, which appeared in section 10.2 of the contract of sale:



Seller, for itself and its successors and assigns shall covenant at closing that, for
a period of thirty (30) years after the closing, it will not permit, lease, allow or
use, either by itself or any tenants thereof, directly or indirectly, any portion of the
Shopping Center (exclusive of the Property) acquired by Seller or any of its
affiliates or any property located within one (1) mile of the boundaries of the
property owned or controlled by Seller or its affiliates for any kind of family-oriented, coffee shop styled restaurant that would directly compete with the
purchaser's restaurant operation, such as, but not limited to, the Village Inn, Bob's
Big Boy, Shoney's, Denny's, Perkins', Waffle House, Baker's Square, Coco's,
JB's or Allie's.



(emphasis added). The contract for sale also provided that the use restriction was to be
incorporated into the general warranty deed conveying the tract to IHOP. However, instead of
the version that appeared in the contract for sale, a restriction that differed by one word was
incorporated into the deed. While the contract for sale version prohibited "any kind of family-oriented, coffee shop styled restaurant that would directly compete," the restriction in the deed
prohibited "any kind of family-oriented coffee shop or restaurant that would directly compete." 
The or-worded restriction of the deed was also incorporated into the grant of easements and
restrictions (hereinafter "the restrictive covenant"), a separate instrument. The sale to IHOP
closed on June 3, 1991.

 Meanwhile, prior to closing with IHOP, New Braunfels was contacted by a real
estate broker from the Dallas-Fort Worth area with a "prospect" interested in purchasing a portion
of the remainder of the six-acre tract. New Braunfels began negotiating through the broker in
early May 1991. At trial, Eversberg testified that he told the broker about the restrictive covenant
and the upcoming closing with IHOP, and that ultimately IHOP would have to be notified and
consent to the sale. Eversberg testified that the broker did not identify his prospect, but told him
that it was neither a "coffee shop styled restaurant" nor a direct competitor of IHOP's.

 Eversberg testified that he learned the broker's prospect was Cracker Barrel when
the broker visited his office on May 15. At this meeting, Eversberg gave a copy of the restrictive
covenant to the broker who, after reviewing it, stated that he did not think it would prohibit
Cracker Barrel. In a later meeting, on May 29, 1989, a representative of Cracker Barrel visited
Eversberg's office and made an offer for the adjacent tract. Negotiations between New Braunfels
and Cracker Barrel continued. By July, Cracker Barrel and New Braunfels had agreed on a price. 
Eversberg testified that at this point, he decided that IHOP should be notified of Cracker Barrel's
interest in purchasing the adjoining tract.

 When New Braunfels notified IHOP, seeking consent for the sale to Cracker Barrel,
IHOP requested a Cracker Barrel menu and other information concerning the restaurant. On July
31, 1991, after reviewing the information, IHOP refused to consent to the sale, contending that
Cracker Barrel was a direct competitor and therefore prohibited by the restrictive covenant.

 New Braunfels sued IHOP, (1) seeking damages under various tort and contract
theories, (2) seeking to void the restrictive covenant for lack of consideration, and seeking
reformation of the restrictive covenant based on mutual mistake. IHOP responded with a general
denial and pleas of waiver and estoppel, and counterclaimed against New Braunfels for damages
and attorney's fees, alleging breach of the restrictive covenant by New Braunfels. IHOP also
sought a declaratory judgment that the restrictive covenant prohibited a sale to Cracker Barrel.

 At trial, the jury rejected New Braunfels' claims except for making a finding that
the difference in wording between the restrictive covenant and the contract for sale was the result
of a mutual mistake. The jury findings on IHOP's claims were favorable, notably that both
versions of the restrictive language prohibited a sale to Cracker Barrel and that New Braunfels was
estopped from complaining of the wording in the restrictive covenant. New Braunfels filed a
motion for judgment seeking reformation of the restrictive covenant based on the jury's finding
of mutual mistake. IHOP, in turn, filed a motion to disregard the mutual mistake finding based
on the jury's finding that New Braunfels was estopped from complaining of the wording in the
restrictive covenant.

 The trial court denied both New Braunfels' motion for reformation and IHOP's
motion to disregard the mutual mistake finding, but did hold that New Braunfels was "estopped
from complaining of the wording in the [restrictive covenant]," and rendered a take nothing
judgment against New Braunfels. The district court also ordered New Braunfels to pay IHOP's
attorney's fees and court costs. 

 New Braunfels appeals the district court's final judgment, raising fourteen points
of error. New Braunfels' points of error challenge the district court's judgment that Cracker
Barrel is a prohibited restaurant under the restrictive covenant, the court's refusal to order
reformation of the restrictive covenant, several evidentiary rulings, and the award of attorney's
fees to IHOP.


DISCUSSION


Reformation

 In its first point of error, New Braunfels contends that the trial court erred in failing
to reform the restrictive covenant based upon the jury's finding of mutual mistake because there
was no evidence of estoppel, and in its eighth point of error, that there is insufficient evidence to
support the jury's finding of estoppel. In reviewing a "no evidence" point, we must consider only
the evidence and inferences that tend to support the finding, and disregard all evidence and
inferences to the contrary. Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458 (Tex. 1992);
Benoit v. Wilson, 239 S.W.2d 792, 796 (Tex. 1951). If there is any evidence of probative force
to support the finding, the finding must be upheld. In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951) (per curiam). When reviewing a jury verdict to determine the factual sufficiency of
the evidence, we must consider and weigh all the evidence and should set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); King's Estate, 244 S.W.2d at 661;
see also Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). See generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex.
L. Rev. 515 (1991).

 Question number twelve asked: "Are the Plaintiffs estopped from complaining of
the wording in the [restrictive covenant] (Plaintiff's Exhibit `15')?" The accompanying jury
instruction defined estoppel as follows:



"Estoppel" is a rule to prevent one from taking advantage of a condition or
situation, when, with knowledge of the facts, he has so conducted himself as to
lead the other party to believe that he would not do as he did. Estoppel is based
on the principle that one may not profit from his own or his agent's wrongful act.



This instruction embodies both the doctrines of equitable estoppel and quasi-estoppel. See Stubner
Realty 19 v. Cravens Rd. 88, Ltd., 817 S.W.2d 160, 163-64 (Tex. App.--Houston [14th Dist.]
1991, no writ). The elements of equitable estoppel are: (1) a false representation or concealment
of material facts made with the intent that another act on the false representation or silence; (2)
made by a party with knowledge of the facts; (3) to a party without knowledge or the means of
knowledge of the real facts; (4) who detrimentally relies on the representation or concealment. 
Gulbenkian v. Penn, 252 S.W.2d 929, 932 (Tex. 1952); Stubner Realty 19, 817 S.W.2d at 163. 
Quasi-estoppel is like equitable estoppel but requires no showing of false representation and
detrimental reliance. Stubner Realty 19, 817 S.W.2d at 164; Stimpson v. Plano Indep. Sch. Dist.,
743 S.W.2d 944, 946 (Tex. App.--Dallas 1987, writ denied); El Paso Nat'l Bank v. Southwest
Numismatic Inv. Group, Ltd., 548 S.W.2d 942, 948 (Tex. Civ. App.--El Paso 1977, no writ).

 IHOP points to certain evidence in the record, contending that it supports the jury's
finding of estoppel. In sum, this evidence amounts to the following: New Braunfels was
negotiating for the sale of the adjacent tract without IHOP's knowledge prior to closing with
IHOP; New Braunfels informed Cracker Barrel, a potential buyer, that the land would be subject
to the restrictive covenant; New Braunfels stood to make a profit from a sale to Cracker Barrel;
and New Braunfels failed to notice the different wording in the restrictive covenant before signing
it. We fail to see how any of this evidence supports estopping New Braunfels from seeking
reformation of the restrictive covenant. New Braunfels certainly was not barred from negotiating
with a potential buyer of the adjacent tract because of the impending closing with IHOP, nor was
it improper for New Braunfels to inform the potential buyer that the tract was subject to a
restrictive covenant. IHOP also does not point to any obligation on the part of New Braunfels
under the restrictive covenant to inform IHOP when it began negotiations with Cracker Barrel. 
Furthermore, any negligence on the part of New Braunfels in failing to discover the different
wording in the restrictive covenant before signing it does not preclude reformation. San Antonio
Nat'l Bank v. McLane, 70 S.W. 201, 202-03 (Tex. 1902); Brinker v. Wobaco Trust, Ltd., 610
S.W.2d 160, 164 (Tex. Civ. App.--Texarkana 1980, writ ref'd n.r.e.); Ace Drug Marts, Inc. v.
Sterling, 502 S.W.2d 935, 940 (Tex. Civ. App.--Corpus Christi 1973, writ ref'd n.r.e.).

 IHOP, however, points to the jury's finding that under either wording of the
restriction, Cracker Barrel is prohibited from using the property, and that the different wording
is of no consequence to the outcome of this case. We will discuss whether the different wording
has any effect on the restrictive covenant's application to Cracker Barrel subsequently. However,
the issue of whether New Braunfels is entitled to reformation is distinct from the issue of whether
the restrictive covenant, if reformed, would prohibit a sale to Cracker Barrel. Even if reforming
the restrictive covenant would not alter the outcome of this case, we cannot say that it therefore
could not affect the outcome of any case that might arise in the next thirty years, the length of
time that the restrictive covenant is effective.

 Accordingly, we sustain New Braunfels' first and eighth points of error. Based
upon the jury's finding of mutual mistake, we will reform the restrictive covenant, replacing the
phrase "family-oriented coffee shop or restaurant" with "family-oriented, coffee shop styled
restaurant." See Thalman v. Martin, 635 S.W.2d 411, 413 (Tex. 1982) (party entitled to
reformation when an agreement has been reached but the writing does not reflect parties' true
agreement because of mutual mistake); Champlain Oil & Ref. Co. v. Chastain, 403 S.W.2d 376,
382 (Tex. 1965) (same).



The Reformed Restrictive Covenant Applied to Cracker Barrel

 Having reformed the restrictive covenant, we must now determine whether the
restrictive covenant, as reformed, prohibits Cracker Barrel from purchasing the tract adjacent to
IHOP. In its second and seventh points of error, New Braunfels contends that the trial court erred
in overruling appellants' motion for new trial because the jury's failure to find that Cracker Barrel
was permitted under the reformed restrictive covenant (3) was against the great weight and
preponderance of the evidence, and that the trial court erred in rendering judgment pursuant to
the jury verdict. We note that a trial court may disregard a jury's findings and grant a motion for
judgment notwithstanding the verdict only when there is no evidence supporting the jury's
findings. Tex. R. Civ. P. 301; Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990);
Williams v. Bennett, 610 S.W.2d 144, 145 (Tex. 1980).

 Though in part raised as a sufficiency of evidence challenge, New Braunfels'
challenge to the application of the reformed restrictive covenant to Cracker Barrel hinges on the
legal issue of interpretation of the restrictive covenant. The reformed restrictive covenant reads
as follows:



Grantor, its successors and assigns, . . . shall not permit, lease, allow or use,
either by themselves or any tenant thereof, directly or indirectly, any portion of the
Grantor's Property for any kind of family-oriented, coffee shop styled restaurant
that would directly compete with Grantee's, or its successors', assigns', tenants'
or subtenants' restaurant operation, such as, but not limited to, The Village Inn,
Bob's Big Boy, Shoney's, Denny's, Perkins', Waffle House, Baker's Square,
Coco's, JB's or Allie's;



Immediately following this prohibitive language is permissive language, which reads as follows:



PROVIDED, HOWEVER, Grantor or its successors and assigns, may permit,
lease, allow or use, either by themselves or any tenants thereof, directly or
indirectly, any portion of the Grantor's Property for any kind of food service
operation which does not directly compete with Grantee's, its successors' or
assigns' restaurant operation, such as, but not limited to, dinner houses, seafood,
oriental, French, Mexican, Italian, or other ethnic restaurants, or for any so-called
"fast food" service operation, such as, but not limited to, McDonald's, Burger
King, Wendy's, Taco Bueno, Taco Bell or Whataburger, or for any ice cream,
yogurt, pop, submarine sandwich, pizza or similar food specialty shops;



The parties present us with two conflicting interpretations of the above language.

 New Braunfels' interpretation focuses solely on the prohibitive language in the
restrictive covenant. New Braunfels contends that under a reading of the plain language of the
restrictive covenant, a "restaurant operation" is excluded only if it is one of the ten restaurants
specifically excluded by name, or is a "family-oriented, coffee shop styled restaurant that would
directly compete" with IHOP. Having replaced the word "or" with "styled," New Braunfels
argues, the descriptive terms each modify the term "restaurant." Therefore, New Braunfels
argues, if a restaurant is not specifically excluded by name, it is only prohibited if it is all three
of the following: (1) "family-oriented"; (2) "coffee shop styled"; and (3) "directly compete[s]"
with IHOP. New Braunfels contends that IHOP did not demonstrate at trial that Cracker Barrel
was a "coffee shop styled" restaurant, and therefore Cracker Barrel should not be prohibited by
the restrictive covenant.

 IHOP, on the other hand, urges us to read the restrictive covenant as a whole. 
IHOP argues that the restrictive covenant divides all restaurants into two classes: those
restaurants that are prohibited by the restrictive covenant, and those that are permitted. Under
IHOP's reading of the restrictive covenant, the prohibited class is described first as family-oriented coffee shop styled restaurants that directly compete with IHOP. The bare words of this
description are given further meaning by a list of specifically excluded restaurants. The permitted
class is likewise defined by example and by the description "does not directly compete." Thus,
in applying the restrictive covenant to Cracker Barrel, IHOP contends that the relevant inquiry
is to determine in which class Cracker Barrel fits. Further, IHOP contends that in the context of
the restrictive covenant as a whole, the result of the covenant's application to Cracker Barrel does
not depend on whether the terms "or" or "styled" are used.

 We conclude that IHOP's interpretation of the restrictive covenant is the proper
one. (4) Accordingly, having reviewed the record, we find ample evidence to support the jury's
failure to find that Cracker Barrel was permitted by the reformed restrictive covenant, and
determine that the trial judge properly denied New Braunfels' motion for judgment
notwithstanding the verdict.

 First, there is evidence in the record that Cracker Barrel is a modern coffee shop
styled restaurant. Dr. Bill Mitchell, expert witness for IHOP, testified that many restaurants that
began as traditional coffee shops evolved over time into today's "family oriented restaurant." For
example, Mitchell testified that while many restaurants began by almost exclusively serving
breakfast, dinner now accounts for approximately forty percent of their sales. Additionally, most
of these restaurants have also expanded their menus well beyond traditional coffee shop fare.

 Second, the record contains evidence that Cracker Barrel is a direct competitor of
IHOP. Both Mitchell and Peter Berlinski, IHOP'S other expert witness, testified that IHOP and
Cracker Barrel are direct competitors. The two experts based their conclusions in part on an
examination the menus of IHOP and Cracker Barrel. The two experts reviewed the contents of
the menus before the jury, explaining that the menus demonstrated that both restaurants offered
similar items for breakfast, lunch, and dinner and sold them for similar prices. The menus also
were admitted into evidence as exhibits.

 Finally, the record contains evidence that the restaurant industry regarded Cracker
Barrel and IHOP as part of the category of restaurants of which the restaurants specifically
excluded in the restrictive covenant are a part. Berlinski relied upon several trade periodicals
during his testimony to reach this conclusion, among them The Crest Report, The Re-Count
Report, Nations Restaurant News, and Choice in Chains. New Braunfels assigns no error to the
admission of these articles. Most of these publications grouped both IHOP and Cracker Barrel
with the restaurants specifically excluded in the restrictive covenant, such as Baker's Square,
Coco's, and Waffle House.

 New Braunfels contends, however, that at trial the issue of whether Cracker Barrel
is a direct competitor of IHOP obscured the issue of whether Cracker Barrel is a coffee shop
styled restaurant. However, the restrictive covenant defines the prohibited class of restaurants as
both "family-oriented coffee shop styled restaurants" and direct competitors of IHOP, with further
definition by named examples. Therefore, evidence that Cracker Barrel is a direct competitor of
IHOP was relevant to the inquiry of whether Cracker Barrel is part of the prohibited class of
restaurants.

 Accordingly, because the record contains ample evidence that supports the jury's
failure to find that the reformed restrictive covenant permits a sale to Cracker Barrel, we overrule
New Braunfels' second and seventh points of error.



Evidentiary Challenges

 In points of error three through five, New Braunfels challenges several of the trial
court's rulings on the admission and exclusion of evidence. Review of a trial court's evidentiary
rulings entails a two-step analysis. To obtain a reversal of a judgment, the appellant must show
first that the trial court did in fact commit error, and second that the error was reasonably
calculated to cause and probably did cause the rendition of an improper verdict. Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); Bridges v. City of Richardson, 354
S.W.2d 366, 368 (Tex. 1962); Tex. R. App. P. 81(b). The admission or exclusion of evidence
rests with the sound discretion of the trial court. Tracy v. Annie's Attic, Inc., 840 S.W.2d 527,
531 (Tex. App.--Tyler 1992, writ denied); Luvual v. Henke & Pillot, 366 S.W.2d 831, 838 (Tex.
Civ. App.--Houston [1st Dist.] 1963, writ ref'd n.r.e.). Thus, the trial court commits error only
when it acts in an unreasonable and arbitrary manner, or acts without reference to any guiding
principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1992); Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Further, there is no
reversible error if the evidence in question is cumulative and not controlling on a material issue
dispositive of the case. Gee, 675 S.W.2d at 396; Whitener v. Traders & Gen. Ins. Co., 289
S.W.2d 233, 236 (Tex. 1956).

 In its third point of error, New Braunfels challenges the admission at trial of a June
1992 Consumer Reports article titled "Best Meals Best Deals." The article contained a readers'
poll rating thirty-six restaurant chains on their food, service, atmosphere, and cost. The poll
results were published as a graph, with Cracker Barrel and IHOP both listed as "family
restaurants." The article accompanying the poll results also labeled both IHOP and Cracker
Barrel as "in the coffee-shop class." New Braunfels objected that the article was hearsay, but the
trial court admitted the article after IHOP responded that it was admissible under the hearsay
exception contained in Rule 803(17) of the Texas Rules of Civil Evidence.

 The hearsay exception provided by Texas Rule of Evidence 803(17) permits the
admission of certain objective data: "Market quotations, tabulations, lists, directories, or other
published compilations, generally used and relied upon by the public or by persons in particular
occupations." Tex. R. Civ. Evid. 803(17). At common law, survey results were also admissible
provided that the party opposing admission was given the opportunity to cross-examine the person
who had conducted the survey. Texas Aeronautics Comm'n v. Braniff Airways, Inc., 454 S.W.2d
199, 203-04 (Tex. 1970); Lubbock Radio Paging Serv., Inc. v. Southwestern Bell Tel. Co., 607
S.W.2d 29, 32 (Tex. Civ. App.--Beaumont 1980, writ ref'd n.r.e.).

 From our review of the rule, we do not consider this article to come within the
rule's exception. First, IHOP did not use the results of the survey but instead the survey's
characterization of both Cracker Barrel and IHOP as family restaurants and coffee shops. 
Second, IHOP did not make available for cross-examination the party who conducted the survey. 
Accordingly, we find that the trial court erred by admitting the article under this hearsay
exception. However, the error was harmless because of the cumulative nature of the admitted
evidence. As we have already noted, several articles of the same nature were admitted into
evidence during the testimony of Peter Berlinski. Further, Mitchell, IHOP's other expert witness,
testified to essentially the same facts as those contained in the article. (5) New Braunfels' third point
of error is overruled.

 In its fourth point of error, New Braunfels challenges the admission of the
testimony of Reginald Mudd, Cracker Barrel's vice-president of operations, which was taken by
deposition on written questions and read into the record at trial. The sum of Mudd's testimony
was that Cracker Barrel directly competed with IHOP. New Braunfels raises several objections
to the admission of Mudd's deposition testimony. First, New Braunfels contends that IHOP did
not timely identify Mudd as a witness in response to New Braunfels' interrogatories. New
Braunfels also contends that the trial court erred by admitting Mudd's deposition testimony
because several requirements of Texas Rule of Civil Procedure 208 were not met; namely, that
(1) IHOP failed to give notice and serve on New Braunfels copies of their written questions ten
days prior to Mudd's deposition, leaving New Braunfels with less than ten days to propound
cross-questions; (2) only some of the questions in the notice were propounded to Mudd rather than
all of them; and (3) the testimony of Mudd was taken by a Cracker Barrel attorney instead of by
the designated deposition officer. See Tex. R. Civ. P. 208. Additionally, New Braunfels
contends that IHOP "improperly coerced and influenced" Mudd's testimony. Because we agree
that Mudd was not properly identified as a witness, we conclude that the trial court erred in
admitting this testimony.

 Rule 166(b)(6) of the Texas Rules of Civil Procedure allows a party to supplement
a discovery request less than thirty days before trial only if the trial court makes a finding that
good cause exists to do so. Tex. R. Civ. P. 166(b)(6). Without a finding of good cause by the
trial court, a party's failure to timely supplement answers results in the automatic exclusion of the
testimony of the witness. Tex. R. Civ. P. 215(5); Alvarado v. Farah Mfg. Co., 830 S.W.2d 911,
914-15 (Tex. 1992); Morrow v. H.E.B., Inc., 714 S.W.2d 297, 297-98 (Tex. 1986) (per curiam).

 On November 25, 1991, New Braunfels directed interrogatories to IHOP, the
second of which asked IHOP to identify all parties with knowledge of relevant facts. (6) IHOP did
not identify Cracker Barrel in response to this interrogatory until May 22, 1992, in "Defendant's
Third Supplemental Answer to Plaintiffs' First Set of Interrogatories." Trial was set to begin on
June 1, 1992. The trial court made no finding that good cause existed for IHOP's identification
of Cracker Barrel less than thirty days before trial. The trial court therefore erred in admitting
the deposition testimony of Mudd, the agent designated by Cracker Barrel for its deposition on
written questions.

 Having determined that Mudd's testimony was improperly admitted, we must
consider whether the error was harmful. We note that Mudd's testimony was received solely on
the issue of whether Cracker Barrel directly competed with IHOP. Proving that Cracker Barrel
was a direct competitor was the major thrust of IHOP's case. However, in addition to Mudd's
testimony, IHOP also called two expert witnesses to the stand and presented extensive
documentary evidence to establish that Cracker Barrel was a direct competitor. In contrast, the
focus of New Braunfels' case was the issue of whether Cracker Barrel was a "coffee shop styled
restaurant." Indeed, New Braunfels took the position that it did not need to dispute the issue of
whether Cracker Barrel directly competed with IHOP to prevail in this suit. Accordingly, because
Mudd's written testimony was, at most, cumulative of other evidence IHOP presented indicating
that Cracker Barrel was a direct competitor, we conclude that the error in its admission was
harmless. New Braunfels' fourth point of error is overruled.

 In its fifth point of error, New Braunfels contends that the trial court erred in
excluding evidence of IHOP's attempt to enforce restrictions in another case because the evidence
was relevant to prove fraud. The excluded evidence indicated that IHOP had sought to prohibit
a Taco Cabana restaurant from selling pancakes, eggs, and coffee by relying upon a lease
restriction similar to the reformed restrictive covenant at issue here. The trial court excluded this
evidence, having determined that its admission would have required a trial within a trial; if
admitted, IHOP would have been permitted to call its own witnesses to demonstrate that
prohibiting Taco Cabana from selling these items was justified under the terms of the lease.

 Rule 403 of the Texas Rules of Civil Evidence provides that, "Although relevant,
evidence may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,
or needless presentation of cumulative evidence." Tex. R. Civ. Evid. 403. Commentators have
written the following on Rule 403 of the Federal Rules of Evidence, upon which the Texas rule
is based:



Rule 403 is an explicit grant of discretion to the trial judge. While the decision to
adopt the rule may represent a concession to the inevitability of discretion that
arises from flaws in the rules or weaknesses in appellate enforcement, Rule 403
also rests on the assumption that a degree of trial court discretion is desirable as
well as inevitable.



Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5212, at 252
(1978). We hold that the trial court did not abuse its discretion under this rule. New Braunfels'
fifth point of error is overruled.



Attorney's Fees

 New Braunfels raises several challenges relating to the district court's award of
attorney's fees in its sixth, and ninth through fourteenth points of error. Given that we have
sustained New Braunfels' first and eighth points of error and reformed the restrictive covenant,
we will remand the cause in order to permit the district court to re-examine its award of attorney's
fees.



CONCLUSION


 We reverse that part of the district court's judgment denying reformation and
render judgment reforming the restrictive covenant. We affirm that part of the district court's
judgment finding Cracker Barrel prohibited by the restrictive covenant as reformed. Finally, we
remand the portion of the cause concerning attorney's fees to the district court for a re-examination of its award of attorney's fees.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Reversed and Rendered in Part; Affirmed in Part; Reversed and Remanded in Part

Filed: March 9, 1994

Publish

1.   New Braunfels also sued two of IHOP's employees, John Baird and J. Ken Masuda.
2.   In their second amended original petition, New Braunfels brought suit under
theories of breach of contract, breach of express and implied warranties, fraud,
misrepresentation, negligent misrepresentation, and negligence.
3.   The jury considered the application of both versions of the restrictive covenant to
Cracker Barrel. Question number one reads as follows: "Do you find that paragraph
10.2(a) in the Contract of Sale (Plaintiffs' Exhibit `12') permits use of the adjoining
property for a Cracker Barrel?" The jury answered "no." The restriction in paragraph
10.2 of the contract for sale is identical to the reformed restrictive covenant.
4.   We note that the interpretation IHOP advocates is consistent with the general rule
of construction that provisions of written instruments are to be read not in isolation but in
the context of the instrument as a whole. See, e.g., United Am. Ins. Co. v. Selby, 338
S.W.2d 160, 164 (Tex. 1960) (relying upon the general rule of contract construction "that all
parts of the contract are to be taken together" in construing an insurance policy).
5.   An expert witness can testify from a published hearsay article as one of the bases for
his or her expert opinion. See Tex. R. Civ. Evid. 703.
6.   Specifically, New Braunfels' second interrogatory asked: "Identify each person
having knowledge of relevant facts concerning the occurrences made the basis of this
lawsuit, Plaintiffs' allegations as to liability and damages and Defendants' allegations as
to liability and damages. For any person identified, state generally and briefly the
subject matter for which he has knowledge."