NO. 07-03-0376-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 24, 2004
_____

GRACE MAXINE HEDGECOKE, et al.,

Appellants

v.

AMARILLO NATIONAL BANK, as Trustee of the BEN GOLDING TRUST, et al.,

Appellees
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 86,424-B; HON. JOHN BOARD, PRESIDING
_____

*Memorandum Opinion*
_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Appellants Grace Maxine Hedgecoke, Sallye Elizabeth Hedgecoke Hand, Patty J. Ragan, Jamie Broom Garland, Amy Melton, Lori Hill, Risa Lee Jones, and Tina Freeman, individually and as executrix of the estate of James Greer, (collectively referred to as Hedgecoke) contest the summary judgment granted in favor of appellees Ben Golding, Ann Golding Stelle, Doyle Bunch II, Kay Lynn Bunch Gregory, Doyle Raymond Bunch III, John Scott Gregory, and Becky Jane Gregory (collectively referred to as Golding) and construing

the will of Ben Golding. Appellee Amarillo National Bank (ANB), as trustee of the Ben Golding Trust, instituted the lawsuit. The other parties to the litigation are grandchildren and great- grandchildren of Ben Golding. In challenging the summary judgment, Hedgecoke contends that the trial court erred 1) generally in executing it, 2) in denying recovery on grounds unspecified in the motion for summary judgment, and 3) in failing to award them attorney's fees. We affirm in part and reverse and remand in part.

### *Background*

Ben Golding died in 1957 with a will that provided for the creation of a trust. His wife Sallye was designated as the initial recipient of the income to accrue. On her death, the income was to be distributed to his children and others. Who those others are forms the basis of the dispute before us. Hedgecoke reads the will as including great-grandchildren within that group. Furthermore, at one time, ANB distributed such income to various of the great-grandchildren. It stopped doing so and instead initiated suit for a declaratory judgment construing the terms of the will.[1] Golding and Hedgecoke were made parties to the action.

Golding eventually moved for summary judgment and requested the court to construe the will as excluding great-grandchildren from the class of income beneficiaries. The trial court denied the motion. However, Golding tendered a "renewed" motion, and it was granted.

---

[1]ANB did not take a position as to the construction of the will and has apparently reimbursed the trust for the funds distributed to the great-grandchildren.

### *Issue One - Construction of the Will*

The standards applicable to the review of motions for summary judgment are well settled and need not be reiterated. Instead, we cite the parties to *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985) and *Kimber v. Sideris,* 8 S.W.3d 672, 674 (Tex. App.–Amarillo 1999, no pet.) in lieu of their explanation.

The primary ground for summary judgment was Golding's contention that the will was unambiguous and did not provide for the descendants of grandchildren (*i.e.,* great-grandchildren) to be income beneficiaries. This contention was based on the following provisions of the will:

> B. Should my wife not survive me, or after her death, my Trustees shall pay to my children equally for life all of the income of this trust estate. At the death of any of my children, if such deceased child leaves no children him surviving, the income from this trust shall then be divided among my surviving children. If, however, such deceased child leaves children him surviving, such children shall take equally that part of the income previously allotted to their parent. Provided, however, that after the second of my children has died, the shares of my deceased children shall be divided equally among their children so that after the death of the last of my children all of my grandchildren, or the survivors of them, will share equally in the income of this trust estate.

> C. This trust shall terminate at the death of the last of the class composed of my wife, my children and my grandchildren living at my death. The assets of this trust, including accumulated income, shall be distributed in fee to the surviving children of my grandchildren on the termination of this trust . . . .

Yet, Hedgecoke disagreed with Golding. They argued that the phrase "or the survivors of them," appearing in the last sentence of paragraph B, referred to the descendants of the grandchildren and meant that the great-grandchildren were to share in the income. To support this view, Hedgecoke also relied upon extrinsic evidence purportedly addressing the intent of Ben Golding.

3

In construing a will, the court must focus on the intent of the testator. *San Antonio Area Foundation v. Lang,* 35 S.W.3d 636, 639 (Tex. 2000). Furthermore, that intent must be garnered from the will, not the will from the intent. *Id.* at 640. In other words, the requisite intent must be ascertained from the language found within the four corners of the document, and the court should focus not on what the testator intended to write but the meaning of the words actually written. *Id.* at 639; *Estate of Dillard,* 98 S.W.3d 386, 391 (Tex. App.–Amarillo 2003, pet. denied). Moreover, only when the words used in the will are susceptible to more than one reasonable construction may extrinsic evidence be admitted to determine the requisite intent of the testator.[2] That evidence may consist of the testator's situation, the circumstances surrounding execution of the will, and other indicia enabling the court to place itself in the shoes of the testator at the time the document was executed. *San Antonio Area Foundation v. Lang*, 35 S.W.3d at 639; *Estate of Dillard,* 98 S.W.3d at 392. But, again, this exception applies when the words of the instrument are susceptible to interpretation in two or more reasonable ways and those interpretations conflict with each other. *San Antonio Area Foundation v. Lang,* 35 S.W.3d at 641. If that should not occur, then the court can look no further than to the instrument itself when divining intent.

Regarding the phrase "or the survivors of them" appearing in paragraph B, we immediately note that it served as a component in defining the class of income beneficiaries. Yet, those words were not the only ones used by the testator in defining it. Indeed, the testator expressly demarcated its scope in paragraph C. *See Eckels v. Davis,*

---

[2]A document is not ambiguous merely because the parties advance differing interpretations. *Columbia Gas Transmission Co. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996).

4

111 S.W.3d 687, 694 (Tex. App.–Fort Worth 2003, pet. denied) (stating that a court should construe the instrument to give effect to all the provisions so none are rendered meaningless). There, he told all that the trust (which was established for purposes of distributing income and principal when needed) would end on "the death of the last of the *class composed of my wife, my children and my grandchildren* living at my death." (Emphasis added). Given the italicized passage, it is clear that Ben Golding not only perceived but also intended the class of income beneficiaries to consist solely of his wife, children, and grandchildren. Nowhere in that definition did he mention the word great-grandchildren. And, if we were to read his use of the phrase "or the survivors of them" in the way suggested by Hedgecoke, then his attempt to define the class via paragraph C would be rendered meaningless, a result that we cannot condone. *Eckels v. Davis*, 111 S.W.3d at 694. Thus, the summary judgment is not subject to reversal due to a misinterpretation of the will's language.

Of further note is that our construction of the will comports with precedent. For instance, in *Gregg v. Jones,* 699 S.W.2d 378 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.), the court was asked to construe whether the testator's devise to her "husband . . . and any children that might survive me, *or the survivors or survivor of* them . . ." vested the relatives of her husband who were not their children with an interest in the estate. (Emphasis added). It refused to do so. Instead, it held that the italicized phrase referred to the survival of those in the named class, *i.e.* to the named members of the class who were alive when she died. *Id.* at 379. That interpretation is no different than the one made here.

5

We have not overlooked Hedgecoke's citation to *White v. Moore,* 760 S.W.2d 242 (Tex. 1988). However, verbiage appearing in the will in that case is easily distinguishable from the words used at bar. For instance, the testator in *White* bequeathed the pertinent interest to her "six children, viz: Herman, Dewey, Ruby, Lester, Carl and Cecil *and* to the survivor or survivors of them at the time of my death . . . ." *Id.* at 243 (Emphasis added). By using the word "and" as a prefix to the phrase "to the survivor or survivors of them," it appeared that the testator wanted to add potential members to the group expressly named. In other words, the bequest could be reasonably interpreted as encompassing the six expressly named children in addition to some other body of recipients. Thus, the language was considered ambiguous. Ben Golding, however, did not preface his reference to survivors with the word "and." So, the element that helped make the gift in *White* ambiguous is not present here. Nor did Ben Golding include the phrase "or the survivor or survivors of them" in the definition he assigned to the class of income beneficiaries in paragraph C of the will. Again, there he expressly named the persons whom he wanted to receive the income. Furthermore, his designation was clear, specific, and said nothing about granting the offspring of his grandchildren an interest in the income. In other words, the circumstances that created the ambiguity in *White* do not appear here. So, *White* is not controlling.

Nor do we think that the summary judgment should be reversed because Hedgecoke purportedly raised a material fact issue regarding their claim of estoppel. First, estoppel is defensive in nature. *Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988). That is, it exists to prevent the loss of existing rights, not to create them. *Id.* As

6

previously discussed, the will of Ben Golding gave his great-grandchildren no right to the income from the trust.  Thus, they cannot invoke estoppel as a means of filling the void.

Second, the elements of equitable estoppel are 1) a false representation or concealment of material facts with the intent that another act on the false representation or silence, 2) made by a party with knowledge of the facts, 3) to a party who lacks knowledge or the means of garnering knowledge of the real facts, and 4) who detrimentally relies on the representation or concealment.  *New Braunfels Factory Outlet Center, Inc., v. Ihop Realty Corp.,* 872 S.W.2d 303, 307 (Tex. App.–Austin 1994, no writ); *El Paso National Bank v. Southwest Numismatic Inv. Group Ltd.,* 548 S.W.2d 942, 947-48 (Tex. Civ. App.–El Paso 1977, no writ).  The elements of quasi estoppel are the same except there is no requirement of a false representation; nor must there be detrimental reliance.  *New Braunfels Factory Outlet Center, Inc. v. Ihop Realty Corp.,* 872 S.W.2d at 307. Additionally, quasi estoppel bars a party from asserting to another's disadvantage a right inconsistent with a position previously taken.  In other words, the doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one to which the party acquiesced or from which the party accepted a benefit.  *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex. 2000); *Cimarron County Property Owners Ass'n v. Keen,* 117 S.W.3d 509, 509 (Tex. App.–Beaumont 2003, no pet.).

Hedgecoke cited us to no evidence of any false representation uttered by anyone. Nor were we directed to any evidence upon which it could reasonably be inferred that Hedgecoke detrimentally relied on the conduct of either ANB or Golding.  Similarly absent is any reference to evidence suggesting that Hedgecoke lacked knowledge of the relevant

7

facts, *i.e.* the terms of the will, or means to garner such knowledge. Consequently, we cannot say that Hedgecoke carried its burden on appeal to illustrate the existence of a material issue of fact with regard to the defense of estoppel.

In sum, we find no ambiguity in the will's description of the class of income beneficiaries. Furthermore, the trial court correctly interpreted it as omitting the great-grandchildren of Ben Golding. So, its entry of summary judgment on this question was not improper, and we overrule issue one.

### *Issue Two - Matter Not Raised by Motion*

Hedgecoke argues in their second issue that the trial court erred in granting summary judgment on a ground not specified in the motion for summary judgment. That is, counter and cross-claims were alleged by Hedgecoke. They encompassed a request to construe the meaning of the will and to modify the will despite its meaning. The "renewed" motion for summary judgment which resulted in the decree from which appeal was taken purportedly failed to address those counter and cross-claims. We agree.

It is clear that a summary judgment granting more relief than requested by the movant is subject to reversal. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). For instance, if a defendant were to move for summary judgment on only one of four claims asserted by his opponent but the trial court entered judgment denying all the claims, the judgment is erroneous. *Id.*; *Young v. Hodde*, 682 S.W.2d 236, 237 (Tex. 1984).

Hedgecoke alleged in their counter and cross-claims that the will clearly provided for distribution to the great-grandchildren and, if ambiguous, it should be construed as vesting the great-grandchildren with an interest in income since that, purportedly, was his intent. So too did the group aver, in the alternative, that if the will was found to be

8

unambiguous, it should nonetheless be modified to permit allocations of income to the great-grandchildren. Such a modification was permissible, in their view, "because of circumstances not known to or anticipated by Ben Golding, [and] compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust." *See* TEX. PROP. CODE ANN. §112.054(a)(2) (Vernon 1995) (stating that on the petition of a trustee or beneficiary, a court may order that the terms of the trust be modified if, because of circumstances not known to or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust). And, according to Hedgecoke, one purpose of the trust was to provide income to all of Ben Golding's lineage since that was his desire, irrespective of what he said in the trust instrument.[3]

Next, in its "renewed" motion for summary judgment, Golding specifically averred that 1) the "Golding Trust is unambiguous," 2) the "trustor's intent must be determined from within the four corners of the will," 3) the "language of the Golding Trust specifies the class of income beneficiaries . . . and . . . great grandchildren are excluded," 4) the "Golding Trust . . . reveals a plan to limit income beneficiaries to the trustor's children and grandchildren . . .," 5) "opponents' 'estoppel' theory has no basis in the law," and 6) "opponents' so-called 'evidence' has no evidentiary value because it is irrelevant, hearsay,

---

[3]Of course, the counter and cross-claims do not use the exact wording we utilize. Yet, given that pleadings are to be construed liberally, *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) (stating that pleadings are to be construed liberally where there are no special exceptions), that the sum and substance of Hedgecoke's claims involve an attempt to win a share of the trust income, that Hedgecoke alleged it was Ben's intent to provide income to his great-grandchildren, and that the circumstance unknown to Ben which allegedly frustrates that desire can only be, under the circumstances, a construction of the will that excludes his great-grandchildren from the class of income beneficiaries, our characterization of the claims is reasonable when the pleading is construed in its entirety.

9

and/or speculation." Then, they concluded by requesting "the Court to enter summary judgment construing the terms of the Golding Trust to mean that the current income beneficiaries . . . be limited to children and grandchildren of Ben Golding." Yet, nowhere did the movants ask the court to reject the request to modify the trust irrespective of what the trust agreement actually said, though they did acknowledge that Hedgecoke made such a claim. Nor did they assign any specific reason as to why the request for a modification should be denied.[4] Yet, the trial court entered summary judgment not only construing the will but also denying the requested modification. Given this, and our own authority holding that those responding to motions for summary judgment must be given fair notice of the grounds involved, *Franklin v. Enserch, Inc.*, 961 S.W.2d 704, 708 (Tex. App.–Amarillo 1998, no pet.), we must conclude that the relief afforded by the trial court exceeded that sought by Golding.

Again, Hedgecoke's claim regarding modification can be read as being distinct from the allegation that the will was ambiguous. It can be read as positing that irrespective of what the will says and how it should be construed, statute allows the trial court to modify its terms. Whether this claim has any merit is something which we do not decide. We do conclude, however, that it was not attacked in the renewed motion for summary judgment. Nor did Golding argue, on appeal, to the contrary. Instead, it simply said that the issue was waived for three reasons.

---

[4]We note that such a reason was specified in Golding's first motion for summary judgment, which the trial court denied. However, they did not incorporate by reference the allegations contained in the first motion into their second, "renewed" motion. Nor did they simply allude to the allegations contained in their first motion. Instead, they expressly tendered argument justifying the relief sought in the new motion, and the argument omitted grounds specifically pertaining to modification of the trust.

10

The first reason proffered involved Hedgecoke's purported failure to raise the issue of modification in response to the motion for summary judgment. This contention misses the point. Whether or not the counterclaim for modification was alluded to by Hedgecoke in answer to the motion does not authorize the trial court to grant more relief than that sought by the summary judgment movant. It merely serves to show that the claim was not presented for consideration at the time, though the trial court nonetheless addressed it.

As for the second reason, Golding asserted that Hedgecoke waived the issue by executing a stipulation. The latter consisted of a statement wherein the litigants represented to the trial court that "the remaining issues to be determined are the attorneys' fees claimed by the parties . . . ." This purportedly evinced an intent to waive the claim for modification, according to Golding. Yet, the record reveals that by the time the stipulation was executed, the trial court had already entered the summary judgment in question and denied modification. Given that, it cannot be said that the matter was pending resolution when the stipulation was executed. So, informing the trial court that no matters remained for resolution, other than attorney's fees, hardly connotes an intent to waive the claim or the trial court's action *viz* that claim.

As for the third reason, which was made at oral submission of the cause, Golding argued that Hedgecoke raised the issue for the first time on appeal. It is mistaken, however. The record illustrates that after the claim was denied, Hedgecoke moved the trial court to reconsider its decision. Furthermore, one of the contentions averred in its motion involved the act of granting summary judgment on grounds that were not alleged in the motion; indeed, it was the last basis for relief specified in the motion.

11

In sum, more relief than that sought in the motion for summary judgment was granted by the trial court. Thus, that portion of the judgment doing so must be reversed.

## Issue Four - Attorney's Fees

In their final issue, the Hedgecoke group contends it should have been awarded attorney's fees. It appears from the record that the trial court considered the question of attorney's fees under the belief that all other matters had been adjudicated. Given our disposition of issue two, however, claims asserted by Hedgecoke remain pending for resolution. Thus, the decision to deny Hedgecoke attorney's fees was and is premature.[5] We take caution to point out, though, that whether such fees should ultimately be awarded is a matter within the trial court's discretion. *Sunday Canyon Property Owners Ass'n v. Annett,* 978 S.W.2d 654, 659 (Tex. App.–Amarillo 1998, no pet.); *Lyco Acquisition 1984 Ltd. Partnership v. First National Bank of Amarillo,* 860 S.W.2d 117, 121 (Tex. App.–Amarillo 1993, no writ). No suggestion is made on our part about how that discretion should be exercised when all claims are finally addressed.

Accordingly, we affirm that portion of the summary judgment wherein the trial court construed Ben Golding's will and declared that 1) the phrase "survivors of them" refers "to the survivors of the class of Ben Golding's grandchildren, and not . . . the heirs or descendants of the individual class members," 2) under the will and upon the death of the last child of Ben Golding, the income beneficiaries are limited to the grandchildren of Ben Golding but not the heirs or descendants of those grandchildren, 3) the will is unambiguous, and 4) the testimony offered by way of affidavit as summary judgment

---

[5]We note that Hedgecoke does not argue that the award of fees to the other litigants was erroneous.

12

evidence is inadmissible for the purpose of showing that the will is ambiguous. In all other respects, the summary judgment is reversed and the cause is remanded to the trial court. So too do we reverse that portion of the order awarding attorney's fees that explicitly or implicitly denies attorney's fees to Hedgecoke; in all other respects the order is affirmed.


Brian Quinn
Justice