SAN ANTONIO AREA FOUNDATION,
Petitioner,

v.

Sylvan Stephen LANG and Jeanne
Lang Mathews, Respondents.

No. 99–1117.

Supreme Court of Texas.

Argued Sept. 13, 2000.

Decided Nov. 9, 2000.

Hubert W. Green, The Kleberg Law Firm, San Antonio, Richard Goldsmith, Matthews & Branscomb, San Antonio, for petitioner.

Samuel Neil Boldrick, Jr., San Antonio, Royal B. Lea, San Antonio, for respondents.

JUSTICE ABBOTT delivered the opinion for a unanimous Court.

The central issue in this will construction case is whether extrinsic evidence is admissible to construe the term "real property." The parties filed cross-actions for declaratory judgment seeking to determine whether Ruth Lang's devise of real property to her niece and nephew (the Langs) includes Ruth's interest in certain promissory notes and other personal property assets associated with the real property. The probate court rendered final judgment for the San Antonio Area Foundation that: (1) Ruth's interest in the notes and other personal property is not included within the meaning of the term "real property" and therefore does not pass to the Langs; and (2) Ruth's interest in those assets is personal property that passes under the residuary clause to the San Antonio Area Foundation. In reaching its conclusion, the probate court excluded the Langs' extrinsic evidence. The court of appeals reversed and remanded for trial because it determined that the Langs' extrinsic evidence created a fact issue regarding Ruth's intent. *Lang v. San Antonio Area Foundation,* 5 S.W.3d 738 (Tex.App.–San Antonio 1999). We hold that extrinsic evidence is not admissible to construe an unambiguous will provision and that the devise of the real property to the Langs was partially adeemed, that is, extinguished, by sales of part of the property after Ruth executed her will. Accordingly, we reverse the court of appeals' judgment and reinstate the probate

court's judgment in favor of the Foundation.

## I. Background

Ruth Lang executed her will on January 17, 1991. Paragraph five of that will provides:

> I devise and bequeath *the real property and oil and gas real properties in my estate located in Frio County, Texas and Prue Road in San Antonio, Texas* one-half (½) to my nephew, SYLVAN STEPHEN LANG, and one-half (½) to my niece JEANNE LANG MATTHEWS, if either shall survive my death by one hundred twenty (120) days. In the event only one or neither of said beneficiaries so survives me, said non-surviving beneficiary's share shall be distributed to his or her issue, by right of representation.

(Emphasis added.) After making several cash legacies, Ruth's will gives the residuary of her estate to the San Antonio Area Foundation, a charitable organization.

When Ruth died, she owned a twenty-five percent undivided interest in approximately ninety acres of real property located on Prue Road in San Antonio. The ninety acres were originally part of a 219-acre tract owned by the Lang family that, over the years, was partially developed and sold in exchange for real estate lien notes, promissory notes, cash, and net-profit agreements. When she executed her will, Ruth already owned a one-quarter interest in a real estate lien note and accompanying net-profit agreement from a January 1990 sale of part of the Prue Road property. In December 1993, the Lang family sold more acreage from the Prue Road property and Ruth acquired a twenty-five percent interest in two additional notes taken as proceeds from the sale. Until her death on July 25, 1995, Ruth kept her twenty-five percent interest in the three lien notes, an unsecured promissory note executed in December 1993, and cash in a "cash reserve" bank account set up to receive payments from the transactions involving the Prue Road property. At the time of suit, Ruth's interest in these assets was worth about $120,000. The parties dispute whether Ruth's interest in these assets is devised to the Langs in paragraph five of Ruth's will or passes to the Foundation as residuary beneficiary.

In granting summary judgment for the Foundation, the probate court ruled that the meaning of "real property" was unambiguous and excluded the Langs' extrinsic evidence as to the meaning of Prue Road. The probate court also concluded that the parts of the Prue Road property that were sold before Ruth's death were adeemed from the devise. Therefore, Ruth's interest in the proceeds received from the sales passed to the Foundation as residuary beneficiary.

The court of appeals held that a fact issue existed regarding Ruth's intent to devise her interest in the notes to the Langs, and it therefore reversed the summary judgment and remanded the case for trial. 5 S.W.3d 738. The court concluded that the term "real property" in Ruth's will could refer to the land alone, but, considering the extrinsic evidence offered by the Langs, it could also reasonably refer to "that bundle of assets that comprised a long-time, ongoing family business investment." *Id.* at 742.

The court also held that the probate court erred in failing to consider extrinsic evidence of Ruth's intent because "[w]hether or not the phraseology is patently or latently ambiguous, ... it is always proper for the court to consider the circumstances surrounding the use of the[ ] terms when construing the meaning of the words the testatrix used in her will." *Id.* The court further found that regardless of whether the will was ambiguous, the evidence submitted by the Langs raised a fact issue requiring a jury determination. *Id.* at 742–43. Additionally, the court of appeals concluded that section 58(c) of the Probate Code did not resolve the ambiguities in the will and that ademption did not

apply to the Prue Road property that was sold before Ruth's death. *Id.* at 743–45.

The Foundation argues that the court of appeals erred because the term "real property" is unambiguous and therefore extrinsic evidence is not necessary to construe the will. The Foundation also relies on section 58(c) of the Probate Code, which excludes from devises of real property those items of personal property located on or associated with the real property unless the testatrix specifically includes them. The Foundation argues that a proper construction of the will results in Ruth's interest in the notes, collections, and net-profit interests passing under the residuary clause because these assets are personal property distinct from the real property at Prue Road. Finally, the Foundation claims that when the Lang family sold parts of Prue Road in return for the notes, those parts of the devise were adeemed and Ruth's interest in the proceeds of sale, as personal property, does not pass to the Langs.

The Langs argue that the phrase "real property in ... Prue Road" is ambiguous and therefore extrinsic evidence is necessary to construe Ruth's will. The Langs contend that extrinsic evidence would show that: (1) the Lang family considered Prue Road to be a real estate development project that included the land and the notes as one complete package; and (2) Ruth intended to return her interest in the land and the Prue Road notes to the Langs under the devise of real property. Consequently, the Langs claim that ademption does not apply because Ruth's interest in the notes and collections passes to the Langs as part of the Prue Road real property devise.

## II. Rules of Construction and Extrinsic Evidence

■ In construing a will, the court's focus is on the testatrix's intent. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960). This intent must be ascertained from the language found within the four corners of the will. *Shriner's Hosp. for Crippled Children of Tex. v. Stahl,* 610 S.W.2d 147, 151 (Tex.1980). The court should focus not on "what the testatrix intended to write, but the meaning of the words she actually used." *Id.; Rekdahl v. Long,* 417 S.W.2d 387, 389 (Tex.1967); *Kirk v. Beard,* 162 Tex. 144, 345 S.W.2d 267, 273 (1961). In this light, courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent. *Stahl,* 610 S.W.2d at 151; *Welch v. Straach,* 531 S.W.2d 319, 322 (Tex.1975); *Huffman,* 339 S.W.2d at 888.

■ Determining a testatrix's intent from the four corners of a will requires a careful examination of the words used. If the will is unambiguous, a court should not go beyond specific terms in search of the testatrix's intent. *Frost Nat'l Bank v. Newton,* 554 S.W.2d 149, 154 (Tex.1977) (noting that absent an express statement in the will, a court cannot make ad hoc assessments of what the testator believed to be "primary" versus "incidental" purposes). This Court has long held that when there is no dispute about the meaning of words used in a will, extrinsic evidence will not be received to show that the testatrix intended something outside of the words used. *Lehman v. Corpus Christi Nat'l Bank,* 668 S.W.2d 687, 688 (Tex. 1984); *Newton,* 554 S.W.2d at 153; *Huffman,* 339 S.W.2d at 888. This Court has also said that a "court may *always* receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time." *Stewart v. Selder,* 473 S.W.2d 3, 7 (Tex.1971) (emphasis added); *see also Kelley v. Marlin,* 714 S.W.2d 303, 305 (Tex.1986). But this broad approach to the admissibility of extrinsic evidence applies only when a term is open to more than one construction. *See Lehman,* 668 S.W.2d at 689.

### III. Application

■ Ruth's will devises to the Langs her interest in the real property located at Prue Road. The term she chose to describe the devise—"real property"—does not require extrinsic evidence to understand. Despite this fact, the Langs argue that Ruth's devise of "real property" also includes her interest in the real estate lien and promissory notes, net-profit agreements, and cash in the reserve account. Neither Texas statutory nor common law supports this argument.

■ Real property is defined as "land, and generally whatever is erected or growing upon or affixed to land." *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (Gonzalez, J., concurring) (quoting BLACK'S LAW DICTIONARY 1096 (5th ed.1979)). The Probate Code defines "real property" as including "estates and interests in land, corporeal or incorporeal, legal or equitable, other than chattels real." TEX.PROB.CODE § 3(dd). Personal property is defined broadly to include everything that is subject to ownership not falling under the definition of real estate. *Erwin v. Steele*, 228 S.W.2d 882, 885 (Tex.Civ. App.—Dallas 1950, writ ref'd n.r.e.); *see also* BLACK'S LAW DICTIONARY 1233 (7th ed.1999). The Probate Code defines personal property as "interests in goods, money, choses in action, evidence of debts, and chattels real ." TEX.PROB.CODE § 3(z). Promissory notes, net-profit agreements, and cash are personal property, not real property. Thus, because real property has a settled legal meaning, we need not look beyond the terms of the will to find Ruth's intent.

This conclusion is supported by section 58(c) of the Probate Code, which mandates that "[a] devise of real property does not include any personal property located on or associated with the real property ... unless the will directs that the personal property ... [is] included in the devise." TEX.PROB.CODE § 58(c). Because the real estate lien notes and net-profit agreements associated with the Prue Road property are personal property, they would not pass with the devise of real property unless Ruth otherwise specifically directed in her will. Thus, had Ruth wanted to include the personal property associated with the Prue Road real property in her devise, she could have said so in her will. Since she did not, Ruth's interest in the disputed items, as personal property, passes to the Foundation under the residuary clause.

Despite the settled meaning of real property and the directions of the Probate Code, the Langs emphasize the language in *Stewart v.. Selder* that extrinsic evidence is *always* admissible to show the situation and circumstances surrounding the testatrix at the time the will was executed. *See Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971). As one commentator has noted, this language does appear to leave the proverbial "barn door" open for extrinsic evidence. *See* 10 LEOPOLD & BEYER, TEXAS PRACTICE: TEXAS LAW OF WILLS § 47.7 (2d ed.1992) (noting that *Selder* "apparently cleared the way for the reception of extrinsic evidence relating to the circumstances surrounding the testator to establish the testator's intent ... without regard to ... whether the word or phrase is ambiguous"). The Langs further contend that no controlling authority requires an ambiguity in a will before a court may consider extrinsic evidence.

■ The Langs' position is inconsistent with long-standing Texas jurisprudence. As we have said on numerous occasions, "The intent must be drawn from the will, not the will from the intent." *Lehman v. Corpus Christi Nat'l Bank*, 668 S.W.2d 687, 688 (Tex.1984); *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 888 (1960). When a testatrix's intent is apparent on the face of the will, as it is here, extrinsic evidence is not admissible to show a contrary meaning. *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267, 273 (1961). Furthermore, extrinsic evidence may not be used to create an ambiguity in a will when the words used are unambigu-

ous. *See Odeneal v. Van Horn,* 678 S.W.2d 941, 942 (Tex.1984).

The Langs' argument for the liberal use of extrinsic evidence stems in part from a misreading of *Stewart's* discussion of extrinsic evidence. *Stewart* sought to distinguish two types of extrinsic evidence: (1) the background, or historical, extrinsic evidence of the testatrix's surroundings; and (2) the testatrix's "other declarations" that more directly contradict the intent expressed in a will. *See Stewart,* 473 S.W.2d at 7. Neither party contends that "other declarations" of Ruth's intent are admissible. The Langs, however, argue that background, historical extrinsic evidence is admissible to show that the Lang family considered Prue Road to be one "ball of wax" that included the land and the notes associated with its development.

The Langs' reliance on *Stewart* ignores this Court's later directive in *Lehman,* in which we held that *Stewart*'s broad support for extrinsic evidence applies only when the testatrix's will uses a word that is susceptible to more than one construction. *Lehman,* 668 S.W.2d at 689. In *Stewart,* we held that because "cash" could refer to either dollar bills or other forms of currency, like checks or securities, extrinsic evidence was necessary to understand the testatrix's intent. There is no such ambiguity here.

Chief Justice Calvert's concurrence in *Stewart* rings just as true now as it did when he penned it. He disagreed with the Court's "broad language" and argued that some terms such as separate and community property are so clear, plain, and unambiguous that they do not allow constructions other than those "ascribed to them in law." *Stewart,* 473 S.W.2d at 11 (Calvert, C.J., concurring). The same can be said of the term "real property" in Ruth's will: it is a term with a specific meaning ascribed to it in law. As already noted, the definition of real property excludes personal property. Ruth's use of the term "real property" in her will is unambiguous. As a result, any sort of background, historical

extrinsic evidence to explain her will is unnecessary, and the probate court did not err in excluding it.

The Langs' extrinsic evidence shows that the family referred to the land on Prue Road and the notes associated with its development collectively as "Prue Road." In effect, the Langs are attempting to insert an ambiguity into the term "real property." But if "real property" can be made ambiguous or unclear by extrinsic evidence, then few—if any—terms in the legal lexicon cannot be made unclear by extrinsic evidence.

Finally, the Langs contend that Ruth intended to make two distinct gifts: the real property and oil and gas interests in Frio County and a *separate* gift of her interest in the real estate development project at Prue Road, the latter to include both the land and the notes and other personal property associated with it. But as the Foundation argues, paragraph five's logical structure establishes three component parts: the gift, the location of the gift, and the beneficiaries. In this instance, the gift is made up of "real property and oil and gas real properties in my estate." The location of this gift is in two places: "Frio County, Texas and Prue Road in San Antonio, Texas." Finally, the beneficiaries of the gift are "Sylvan Stephen Lang" and "Jeanne Lang Mathews." "Prue Road" relates back to the term "real property" used earlier in the sentence. To read "Prue Road" as a gift separate from "real property" creates an ambiguity when none exists.

In sum, we hold that Ruth's twenty-five percent interest in the notes, net-profit agreements, and reserve-account cash held at the time of her death is not included in the bequest of real property to the Langs in paragraph five of the will. Accordingly, Ruth's interest in these assets passes to the Foundation as residuary beneficiary.

## IV. Ademption

"[A]demption describes the extinction of a specific bequest or devise

because of the disappearance of or disposition of the subject matter given from the estate of the testator in his lifetime." *Shriner's Hosp. for Crippled Children of Tex. v. Stahl,* 610 S.W.2d 147, 148 (Tex. 1980). Unless the testatrix specifically provides otherwise in the will, the sale or removal of a specific bequest from the estate adeems the devise or bequest. *Id.* at 150. A will speaks at the time of the testatrix's death, and only the estate the testatrix then possessed passes under the terms of the will. *Id.* (citing *Haley v. Gatewood,* 74 Tex. 281, 12 S.W. 25, 26 (1889)). When a specific devise of realty is adeemed because the testatrix sold it before her death, absent a contrary intent expressed in the will, the beneficiaries of the realty under the will are not entitled to the sale proceeds; instead, the proceeds pass under the residuary clause. *Id.* at 150–52.

█ The most common cause of ademption is a testatrix's voluntary sale of the subject matter of a devise, and that is what occurred here. Although Ruth devised her interest in the Prue Road real property to the Langs, the parts of the land that were sold were adeemed because, as already discussed, Ruth's bequest of real property does not include the personal property associated with Prue Road. Ruth did not include her interest in the sale proceeds in her devise to the Langs. Thus, Ruth's interest in the personal property received from the sales of parts of the Prue Road real property does not pass with the specific bequest of Prue Road real property to the Langs. Therefore, Ruth's interest in these disputed assets passes to the Foundation under the residuary clause.

█ The Langs argue that the doctrine of ademption is harsh and that courts disfavor it. That may be true in some circumstances, but ademption is also a long-standing doctrine. *See, e.g., Stahl,* 610 S.W.2d at 150 (holding adeemed a testatrix's bequest of her "home place" when she did not change the terms of her will

after the home's sale); *Haley,* 12 S.W. at 26 (holding that a will speaks at the time of the testator's death, and the estate then possessed passes according to the terms of the will). It cannot be said that Ruth did not have either the capacity or opportunity to prevent the partial ademption of the Prue Road devise. Ruth's attorneys unambiguously used the term "real property" in Ruth's will. When a will is drafted by an attorney, courts assume that its words are used correctly and intentionally in their technical sense. *See Mitchell v. Mitchell,* 244 S.W.2d 803, 806 (Tex.1951). Ruth's will made certain to provide for alternative beneficiaries for Ruth's numerous cash legacies, indicating an intent to account for changed future circumstances. The will did not, however, ensure that Ruth's interest in subsequently acquired notes or collections from the sales of parts of the Prue Road real property would pass to the Langs along with the real property.

█ Finally, when Ruth made additional cash bequests in a July 1993 codicil to her will, she did not change paragraph five of the will to ensure her interest in the notes and net-profit agreements would pass to the Langs. When a testatrix executes a codicil, the effect is to republish the will. *See Hinson v. Hinson,* 154 Tex. 561, 280 S.W.2d 731, 735 (1955). When Ruth executed the 1993 codicil, she did not change her will to devise to the Langs her interest in the note acquired in January 1990 along with the existing devise of real property. And, the subsequent sales of the Prue Road real property adeem from the devise those parts of the land sold. Ruth's interest in the sale proceeds, as personal property, passes to the Foundation under the residuary clause.

## V. Conclusion

Ruth Lang's will devises real property to her niece and nephew. Because the term real property in Ruth's will has an unambiguous, settled legal meaning, there is no need to admit extrinsic evidence to

determine Ruth's intent, and the probate court did not err in excluding it. Further, when the Lang family sold portions of the Prue Road real property, Ruth's devise of her interest in those portions was adeemed and her interest in the proceeds from the sales passes to the San Antonio Area Foundation under the residuary clause. Accordingly, we reverse the court of appeals' judgment and reinstate the probate court's judgment in favor of the San Antonio Area Foundation.