# NO. 12-08-00008-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| **IN THE ESTATE OF** | § | *APPEAL FROM THE* |
| **ETHEL E. PRATER,** | § | *COUNTY COURT OF* |
| **DECEASED** | | |
| | § | *CHEROKEE COUNTY, TEXAS* |

### MEMORANDUM OPINION

Kay Keller, independent executrix of the estate of Ethel E. Prater, deceased, appeals from the trial court's order granting Robert K. Jones's motion to interpret certain provisions of Prater's will. On appeal, Keller presents ten issues. We affirm in part, and reverse in part.

### BACKGROUND

Ethel E. Prater died on November 25, 2006. In her will, she named Keller as the independent executrix of her estate. In section II of the will, Prater made specific bequests to twelve individuals, but stated that "if there should not be cash, savings and/or certificates of deposit to satisfy the cash amounts, each [individual] would then receive their pro rata share of the available amount." In section III of the will, Prater specifically bequeathed to Jones

> all of the common stock that I own in the business known as "Specialty Maid, Inc."
> which owns real estate (including other assets), inventory, cash, checking accounts,
> certificate of deposits, equipment, buildings, and the loan owed by Specialty Maid, Inc.,
> to me.

Prater's will was admitted to probate, and letters testamentary were issued to Keller. Keller filed an inventory, appraisement, and list of claims ("inventory"), listing as Prater's separate property an undivided one-half interest in "Specially Maid, Inc.," valued

at $2,500.00. As a claim of the estate, Keller listed a promissory note from "Specially Maid, Inc." to Prater valued at $79,598.88. [1]

Jones filed a motion alleging that there was a genuine controversy as to the interpretation and legal effect of certain provisions of Prater's will. He requested a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code. He also requested an injunction against Keller, asserting that his interest in the estate was threatened with irreparable harm by Keller's "apparent" plan to fund the specific bequests in section II of Prater's will after the assets of the business are sold, the estate receives its portion from the sale, and the loan to Specialty Maid, Inc. from Prater is repaid to the estate. He stated further that he had no adequate remedy at law.

At a hearing on his motion, Jones asserted that Prater bequeathed to him two separate items: (1) all of the common stock in Specialty Maid, Inc., and (2) the loan owed by Specialty Maid, Inc. to Prater.[2] Jones asserted that Prater, not Specialty Maid, Inc., owned the loan, and thus, the only possible construction of the bequest is that Prater bequeathed to him two separate and distinct items. Keller disagreed, noting that the loan was not another gift, but, instead, part of the description of Specialty Maid, Inc. Keller admitted that the loan was not owned by Specialty Maid, Inc., but was an asset of the estate. Her counsel stipulated that, after the loan was repaid, Keller intended to distribute the monies according to the terms of Prater's will, which included paying the obligations of the estate and the specific bequests.[3]

The trial court granted Jones's motion, and found that Prater bequeathed to Jones two separate assets: (1) all of the common stock in Specialty Maid, Inc., and (2) the loan owed by Specialty Maid, Inc. to Prater. Further, the trial court ordered Keller to immediately disburse the proceeds of the loan to Jones once the loan was repaid to the estate. Finally, the trial court enjoined Keller from using the proceeds of the loan in any

---

[1] In the record, the corporate entity in which Prater owned an undivided one-half interest is variously referred to as "Specialty Maid, Inc.," "Specially Maid, Inc.," and "Special Made, Inc." However, Keller notes in her brief that despite the name variations, there is no suggestion that the references were not to the same corporate entity. We will refer to the corporate entity as "Specialty Maid, Inc."

[2] The loan from Prater to Specialty Maid, Inc. is evidenced by the promissory note described in the inventory. However, the term "loan" is used in section III of Prater's will, and the terms "loan" and "proceeds" of the "loan" were used in the trial court. For consistency, we will use the same references.

[3] In substance, Keller argues that the loan is part of the residuary estate. As such, the loan proceeds can be used to satisfy the specific bequests in section II.

manner inconsistent with the order. The trial court filed findings of fact and conclusions of law, including the following conclusions of law:

> 3. Using the specific terms used by the testatrix in the Last Will and Testament of Ethel E. Prater, deceased, the decedent made two specific bequests in section III of her will specifically bequeathing: (1) all of the common stock owned by the deceased in the business known as "Special Made, Inc.[,]" and (2) bequeathing the separate loan owned by the business know[n] as "Special Made, Inc.[,]" both to Robert Jones.
>
> . . . .
>
> 7. Robert Jones is currently in imminent peril of irreparable injury due to the Independent Executrix, Kay Keller's proposed interruption of section III of the Last Will and Testament of Ethel E. Prater, deceased.
>
> 8. To prevent the imminent peril of irreparable injury resulting from the Independent Executrix, Kay Keller's proposed interruption of the will, it is necessary for Ms. Keller to be enjoined from using the proceeds of the loan referenced in section III of the will once repaid by "Special Made, Inc.[,]" in any manner other than immediately disbursing said funds to Robert Jones.

This appeal followed.

## WILL CONSTRUCTION

In her first, second, and third issues, Keller argues that the trial court erred as a matter of law in determining that Prater bequeathed to Jones the loan owed by Specialty Maid, Inc. to Prater. She also contends that the trial court erred as a matter of law in ordering her to disburse the proceeds of the loan to Jones because the loan was not bequeathed to Jones.

## Applicable Law

In construing a will, the court's focus is on the testatrix's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). This intent must be ascertained from the language found within the four corners of the will. *Id.* Determining a testatrix's intent from the four corners of a will requires a careful examination of the words used. *Id.* If the will is unambiguous, a court should not go beyond the will's specific terms in search of the testatrix's intent. *Id.* In other words, when there is no dispute as to what the written words in a will mean, extrinsic evidence cannot be received (1) to show that the testatrix intended something outside of or independent of such written words; (2) to add words to those in the will; (3) to contradict the language in the will; or (4) to take words away from those in the will. *See In re Estate of Schiwetz*, 102 S.W.3d 355, 363-

3

64 (Tex. App.—Corpus Christi 2003, pet. denied) (citing *Huffman v. Huffman*, 161 Tex. 267, 270-73, 339 S.W.2d 885, 888-89 (1960)).

Whether a will is ambiguous is a question of law for the court. *Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied). A will is ambiguous only when the application of established rules of construction leaves its terms susceptible to more than one reasonable meaning. *Id.* If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous. *Id.* Absent ambiguity, the construction of a will is a matter of law. *Parker v. Parker*, 131 S.W.3d 524, 530 (Tex. App.—Fort Worth 2004, pet. denied). We review such questions of law de novo. *Id.* When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 561 (Tex. App.—Tyler 2007, pet. denied). When reviewing a trial court's judgment, the reviewing court should render the judgment that the trial court should have rendered, except when remand is necessary. TEX. R. APP. P. 43.3.

Wills are accorded a liberal construction. *Holliday v. Smith*, 458 S.W.2d 106, 110 (Tex. Civ. App.—Corpus Christi 1970, writ ref'd n.r.e.). Since the form used should be subordinated to the substance, considerable latitude is permitted in respect to the informality with which the testatrix may have expressed her intention, and allowance is made for awkwardness in the use of words and in the structure of sentences. *Id.* We must discover the general scheme of the will, and carry out the dominant or general intent of the testatrix, as far as possible, unless such scheme contravenes an established rule of law or public policy. *Long v. Long*, 252 S.W.2d 235, 247 (Tex. Civ. App.—Texarkana 1952, writ ref'd n.r.e.). Further, the general intent appearing from the provisions of the will as a whole must prevail, and any particular clause or provision which, taken alone, would indicate a contrary intention, will yield thereto. *Id.*

Courts may not redraft a will, vary, or add provisions under the guise of construction of the language of the will in order to reflect some presumed intent of a testatrix. *Shriner's Hosp. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). Moreover, there is no hard and fast rule that requires that language in a will be dissected and measured with mathematical precision. *Neely v. Brogden*, 239 S.W. 192, 194 (Tex. Comm'n App. 1922). It is always permissible, and is in fact proper, to look beyond mere grammatical

4

form to what may be termed the internal evidence of the writer's intention. **Welch v. Straach**, 531 S.W.2d 319, 322 (Tex. 1975). The phraseology, spelling, and punctuation are of little importance in the interpretation of what is said in a will. **Maxey v. Queen**, 206 S.W.2d 114, 117 (Tex. Civ. App.—Fort Worth 1947, writ ref'd n.r.e.).

## Analysis

The parties to this appeal urge that Prater's will is unambiguous, and we agree. Therefore, we review the will de novo.

In section III of her will, Prater bequeathed to Jones

> all of the common stock that I own in the business known as "Specialty Maid, Inc." which owns real estate (including other assets), inventory, cash, checking accounts, certificate of deposits, equipment, buildings, and the loan owed by Specialty Maid, Inc., to me.

Keller argues that, according to basic grammar, the last item in a series follows a conjunction. She points out that, in this specific bequest to Jones, the conjunction "and" is placed before the description of the loan ("*and* the loan owed by Specialty Maid, Inc., to me."). She contends further that the nonessential clause beginning with the word "which" is a series of items, both assets and liabilities, that describes what Specialty Maid, Inc. owns ("which owns real estate (including other assets), inventory, . . . , buildings, and the loan owed by Specialty Maid, Inc., to me."). Thus, she argues, the loan is the last item in the series rather than a specific bequest to Jones. Consequently, she concludes, Prater's only bequest to Jones was the common stock. Jones counters that it is undisputed that Specialty Maid, Inc. did not own the loan, that Prater knew the business did not own the loan, and therefore the omission of "and" before "buildings" was simply either a scrivener's error or "inartful grammar."

As stated previously, in construing Prater's will, our focus is on her intent which we ascertain from the language found within the four corners of the will. *See San Antonio Area Found.*, 35 S.W.3d at 639. The clause beginning with the word "which" in section III of Prater's will describes what Specialty Maid, Inc. owns, including real estate and other assets. Before the word "buildings," however, there is a comma. That comma is followed by a conjunction, "and," which is then followed by a description of the loan to Specialty Maid, Inc. from Prater. Proper grammar dictates that a comma should be placed between all items in a series. *See* Terri LeClercq, EXPERT LEGAL

5

WRITING 152 (1995). Thus, if we consider only the form of this section, it seems that the loan is the last item in a list of what Specialty Maid, Inc. owns.

But Specialty Maid, Inc. did not own the loan. Instead, the loan is a chose in action that was Prater's personal property.[4] *See* TEX. PROB. CODE ANN. § 3(z) (Vernon Supp. 2009); BLACK'S LAW DICTIONARY 275 (9th ed. 2009). Because the loan was Prater's personal property, she had the right to bequeath all the right, title, and interest in the loan that she had at the time of her death. *See* TEX. PROB. CODE ANN. § 58 (Vernon 2003). The loan, therefore, is different in substance from the other items in the series, i.e., items owned by Specialty Maid, Inc. According a liberal construction to Prater's will, the grammatical form of section III of her will yields to the general intent. *See Long*, 252 S.W.2d at 247; *Welch*, 531 S.W.2d at 322. Because the loan was not owned by the business and was Prater's personal property to bequeath, the items in the series beginning with the word "which" ("which owns real estate (including other assets), inventory, . . . , buildings, and the loan owed by Specialty Maid, Inc., to me.") does not include the loan owed to Prater. Therefore, the trial court did not err in finding that Prater bequeathed to Jones all of the common stock she owned in Specialty Maid, Inc., as well as the loan owed to her by Specialty Maid, Inc. Moreover, the trial court did not err in ordering Keller to disburse the proceeds of the loan to Jones once the loan was repaid. Accordingly, we overrule Keller's first, second, and third issues.[5]

### INJUNCTION

In her fourth issue, Keller argues that the trial court erred in granting an injunction against her because Jones had no entitlement, or any right, to the loan. In her fifth, sixth, and eighth issues, she contends that the trial court erred as a matter of law in granting the injunction because there was no evidence that Jones would suffer irreparable harm, had no adequate remedy at law, and was in imminent peril of irreparable injury.

---

[4] Keller has acknowledged Prater's ownership of the loan by listing the promissory note in the inventory as a claim of the estate against Specialty Maid, Inc.

[5] Although the trial court's conclusion of law stated that Prater bequeathed to Jones "the separate loan *owned* by the business" known as "Specialty Maid, Inc.," the trial court noted that it was using the specific terms used by Prater in her will. However, in her will, Prater stated that the loan was *owed* by the business, not *owned* by the business. Thus, we conclude that the term "owned" in conclusion of law number 3 is a typographical error.

**Applicable Law**

Whether to grant a temporary or permanent injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Webb v. Glenbrook Owners Ass'n., Inc.*, No. 05-07-01122-CV, 2009 WL 3135179, at *6 (Tex. App.—Dallas Oct. 1, 2009, no pet. h.). An applicant for injunctive relief must demonstrate (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Id.* An injunction is not proper when the claimed injury is merely speculative; fear and apprehension of injury are not sufficient to support a temporary injunction. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 861 (Tex. App.—Fort Worth 2003, no pet.).

**Analysis**

We have held that the trial court did not err in concluding that Prater's special bequest to Jones included the loan owed by Specialty Maid, Inc. to Prater. Nevertheless, we must determine whether the trial court abused its discretion in concluding that Jones demonstrated he was entitled to injunctive relief. *See Webb*, 2009 WL 3135179, at *6. At the hearing, Keller argued that the loan was not bequeathed to Jones. As such, Keller's counsel stipulated that, after the loan was repaid, Keller intended to use the funds to pay the obligations and specific bequests according to Prater's will. However, neither Keller or Keller's counsel stated that Keller would pay the obligations and specific bequests with the loan proceeds even if the trial court determined that the loan was bequeathed to Jones. Fear and apprehension that Keller will continue with her plan despite a court order to the contrary is not sufficient to support an injunction. *See Fox*, 121 S.W.3d at 861. Because there is no evidence of the existence of imminent harm, the trial court abused its discretion in issuing the injunction against Keller. Accordingly, we sustain Keller's eighth issue.

## CONCLUSION

Based on our review of the record, we overrule Keller's first, second, and third issues, and *affirm* that part of the trial court's order granting Jones's "Motion to Interpret Provisions of Will of Ethel E. Prater." However, we sustain Keller's eighth issue, *reverse*

7

that part of the trial court's order enjoining Keller, and **dissolve** the injunction. Because Keller's eighth issue is dispositive of her remaining issues, we do not address them. *See* TEX. R. APP. P. 47.1.

                                                  **SAM GRIFFITH**
                                                      Justice

Opinion delivered December 31, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

8