**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00060-CV**
_____

**LBM INVESTMENTS, INC., Appellant**

**V.**

**CARIBE PROPERTIES, INC., Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 10-08-09369 CV**

**MEMORANDUM OPINION**

LBM Investments, Inc. ("LBM") sued Caribe Properties, Inc. ("Caribe") for fraudulent misrepresentation, fraud in the inducement, fraud in a real estate transaction, breach of contract, negligence, negligent misrepresentation, fraud by nondisclosure, and breach of implied warranties arising out of LBM's purchase of real property from Caribe. Caribe filed a motion for traditional and no-evidence summary judgment, which the trial court granted. In three appellate issues, LBM

1

challenges the trial court's summary judgment ruling. We affirm the trial court's judgment.

Factual Background

In 2007, the parties entered a contract in which LBM agreed to purchase property from Caribe. The contract provided that "Buyer accepts the [p]roperty in its present condition[.]" The property was inspected in January 2008 and the inspector classified the drainage as "Good" and found that the "[p]roperty appears in excellent overall condition." The inspector noted:

> A considerable amount of fill dirt was used to build up the site before the concrete slab was poured. At the rear of the building, the base of the foundation sits approximately 1 1/2 to three feet above the original land. Fill dirt, which extends approximately eight to ten feet from the edge of the foundation, is bare and is beginning to show significant erosion in some places. In completion of site preparation, to limit erosion, this area should be stabilized with plant material such as grass seeding or vegetation. If left unattended during the wet winter months, erosion could eventually compromise the foundation.

The parties closed on the property in March 2008.

After taking possession of the property, LBM noticed pooling, improper drainage, and defects in the slab and foundation of the building on the property. In May 2009, LBM obtained a geotechnical exploration study, which revealed that the soil was composed of silty sand and sand clay. The inspector explained that "silty sands are highly permeable and can become susceptible to perched trapped

groundwater conditions[]" and the "perched trapped water tends to soften the sandy clays, which severely undermine the pavement integrity." "[S]andy clays are medium to high in plasticity" and "sandy clays with plasticity index larger than 25 are expected to experience shrink and swell movements that are associated with seasonal changes in moisture content in the upper layer." According to the inspector, "[d]uring inclement (rainy) weather, the rainwater permeates through the silty sands and ponds on top of the sandy clays, thus creating a perched (trapped) groundwater condition." Perched water tends to soften sandy clay, which severely undermines the pavement's integrity and may cause premature pavement failure. The inspector stated that no positive drainage was found in the vicinity of the paved area on the property. The inspector opined:

> [T]he combination of perched water which resulted from poor drainage, the lack of subgrade stabilization, and repeated dynamic loads by vehicular traffic [were] the major contributing factors to the pavement distress . . . . The repeated dynamic vehicular traffic loads usually liquefy the existing loose and wet silty sands. Once the silty sands liquefy, they lose their strength and become unable to transfer the loads to the surrounding subgrade[.]

In an affidavit, Ty Odeh, president of LBM, stated that Caribe gave false and incomplete information regarding the quality and condition of the pavement, misrepresented the property's drainage conditions, and failed to disclose the lack of permitting and the lack of compliance with local ordinances. Odeh stated that he

3

did not intend to purchase the improvements on the property "as-is" and he stated that he never heard the parties mention or discuss the sale of the improvements "as-is." In her affidavit, Gail Moran, Caribe's president, stated that she was unaware of any "issues" with the property.

In its traditional motion for summary judgment, Caribe argued that LBM had purchased the property "as is" and could not recover on any of its claims because the "as is" language in the contract negated causation and disclaimed express or implied warranties. Caribe further argued that it had no duty to disclose defects of which it was unaware. In the no-evidence portion of its motion, Caribe contended that LBM lacked any evidence to substantiate the causation element of its claims. The trial court's summary judgment order does not state on which grounds Caribe's motion was granted.

## Traditional Summary Judgment

In issues one and two, LBM challenges the trial court's decision to grant Caribe's traditional motion for summary judgment. We review a trial court's ruling on a traditional summary judgment motion *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We "consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755

4

(Tex. 2007) (per curiam). We "consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Id*. at 756.

Contract language stating that the buyer accepts the property in its present condition constitutes an "as is" clause. *Boehl v. Boley*, No. 07-09-0269-CV, 2011 Tex. App. LEXIS 528, at *5 (Tex. App.—Amarillo Jan. 26, 2011, pet. denied) (mem. op.); *Cherry v. McCall*, 138 S.W.3d 35, 39 (Tex. App.—San Antonio 2004, pet. denied). When a buyer agrees to purchase something as is, he agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). When determining the enforceability of an as-is clause, we consider the nature of the transaction and the totality of the circumstances, including (1) whether the as-is clause is an important part of the basis of the bargain, not an incidental or boilerplate provision, (2) the parties are sophisticated, of relatively equal bargaining position, (3) the contract was freely negotiated, and (4) the contract was an arm's-length transaction. *Id*. at 162.

LBM first contends that the as-is clause is incidental boilerplate language. The contract in this case is a standard commercial contract from the Texas Association of Realtors. However, the record does not indicate that the contract

5

was non-negotiable. LBM does not dispute that the parties were sophisticated or of relatively equal bargaining position, that the contract was freely negotiated, or that the contract was an arm's-length transaction. *See id*. Nor is there evidence that LBM entered the contract from an unequal bargaining position or that the transaction was not made at arm's length. *See Cherry*, 138 S.W.3d at 39. In his affidavit, Odeh stated that he was directly involved in the negotiations with Caribe. The contract is signed by both Odeh and LBM's attorney. LBM was not obligated to assume the full risk of determining the value of the purchase, but could have insisted that Caribe assume part or all of that risk. *See Prudential*, 896 S.W.2d at 161. The as-is clause is enforceable under the totality of the circumstances.

LBM also contends that the as-is clause does not apply to improvements. The contract describes the "property" as "that real property situated in Montgomery County, Texas at 8774 Fawn Trail, Conroe, TX 77385 and that is legally described . . . as . . . Northline Forest, Lot 33, 34, Acres 1.180." The sale of the property included "all buildings, improvements, and fixtures[.]" Because the contract defines the property as "real property" and the definition does not specifically mention improvements, LBM maintains that the as-is clause is limited to the land. The definition of "real property" has been broadly construed to include both the land and anything erected on, growing on, or affixed to the land. *San*

6

*Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000); *Tex. Real Estate Comm'n v. Rodriguez*, No. 04-09-00681-CV, 2010 Tex. App. LEXIS 4532, at *5 (Tex. App.—San Antonio June 16, 2010, pet. denied); Black's Law Dictionary 1337 (9th ed. 2009) (Defining "real property" as "[l]and and anything growing on, attached to, or erected on it[.]"). Because real property includes improvements, the as-is clause applies to both the land and any improvements thereon. *See Lang*, 35 S.W.3d at 640; *see also Rodriguez*, 2010 Tex. App. LEXIS 4532, at *5; Black's Law Dictionary 1337.

Finally, LBM argues that the as-is clause does not disclaim a fraudulent inducement cause of action. Under the fraudulent inducement exception, an as-is clause is not binding on a buyer who is induced to enter the clause because of the seller's fraudulent representation or concealment of information. *Prudential*, 896 S.W.2d at 162. A seller has no duty to disclose facts he does not know and is not liable for failing to disclose what he only should have known. *Id*. A statement is fraudulent when the maker knew it was false when he made it or made it recklessly without knowledge of its truth. *Id*. at 163. "In the context of a summary judgment proceeding, fraudulent inducement is in the nature of a counter-defense responding to the defense raised by the seller." *Fryar v. Mees*, No. 10-06-00135-CV, 2007 Tex. App. LEXIS 3204, at *6 (Tex. App.—Waco Apr. 25, 2007, no. pet.) (mem.

7

op.). The buyer must present evidence that "but for" the seller's representations regarding the condition of the property, the buyer would not have assented to a contract which contained an "as is" clause. *Id*. The buyer must present competent evidence creating a material issue of fact. *Boehl*, 2011 Tex. App. LEXIS 528, at *8; *Fryar,* 2007 Tex. App. LEXIS 3204, at *6.

In his affidavit, Odeh states that the 2009 study demonstrates the defects in the paved improvements. According to Odeh, to induce him to purchase the property, Caribe provided false and incomplete information regarding the quality and condition of the paved improvements, misrepresented the drainage conditions, and failed to disclose the lack of permits and compliance with local ordinances. However, Odeh's affidavit does not state the facts underlying these assertions. *See LeBlanc v. Lamar State College*, 232 S.W.3d 294, 301 (Tex. App.—Beaumont 2007, no pet.) ("Statements are conclusory if they fail to provide underlying facts to support their conclusions."); *see also Aldridge v. De Los Santos*, 878 S.W.2d 288, 296 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.) ("Affidavits containing conclusory statements unsupported by facts are not competent summary judgment proof."). LBM does not present evidence establishing what statements Moran or Caribe made, that Caribe knew the condition of the improvements, or that Caribe made any representations that were known to be false when made or

8

that were made recklessly without knowledge of the truth. *See Prudential*, 896 S.W.2d at 163; *see also Fryar*, 2007 Tex. App. LEXIS 3204, at **7-8.

Viewing the evidence in the light most favorable to LBM, we conclude that there are no genuine issues of material fact, and Caribe was entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *see also Mayes,* 236 S.W.3d at 756; *Knott*, 128 S.W.3d at 215. We overrule issues one and two. Having found that the trial court properly granted Caribe's traditional motion for summary judgment, we need not address LBM's third issue challenging the no-evidence summary judgment ruling. *See* Tex. R. App. P. 47.1. We affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 16, 2013
Opinion Delivered October 17, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.