# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00492-CV

**Heather Martin and John Brown, Appellants**

**v.**

**Leonora Brown, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY
### NO. 30,658, HONORABLE JEANNE PARKER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The question raised in this appeal is whether the language of the will executed by Franklin Brown, the father of appellants Heather Martin and John Brown and the husband of appellee Leonora Brown, supported the trial court's order granting Leonora a life estate in real property he owned in San Saba, Texas. We hold that it does not, reverse the trial court's order, and render judgment that Leonora does not "occupy" the San Saba property and that the property therefore passed to appellants under the will.

### Factual and Procedural Background

Franklin inherited the San Saba property before he married Leonora in July 2000 and executed his will in August 2002. Franklin and Leonora lived in San Saba for some time after they married. In 2004, Franklin and Leonora moved to a home in Copperas Cove, where they lived until Franklin's death in 2013 and where Leonora still lives. In his will, Franklin bequeathed to Leonora

"during her natural life or until such time as she shall fail to occupy the same, all real property which I own in the town of San Saba, Texas. In the event she shall predecease me or cease to occupy said property, then in either of those events, said real property shall pass to and vest in my children."[1]

In 2015, appellants sued for a declaration that they owned the San Saba property in fee simple, asserting that Leonora did not "occupy" the property, that Franklin had used the San Saba property to work on cars and occasionally stayed there overnight, and that Leonora had "never occupied the San Saba Property." Leonora filed an answer stating that when she and Franklin married in 2000, they "resided in the apartment located on the San Saba real property," and that she and Franklin "continued to live on the property and make improvements for several years." Leonora asserted that she "continues to occupy the San Saba real property and structures" and was currently renting the property to a tenant for supplemental income. The trial court signed an order declaring that Leonora had a life estate in the San Saba property, that she was entitled to the "use and benefit of the property including income," and that appellants had a remainder interest in the property.[2]

---

[1] Appellants assert in their brief that when Franklin and Leonora married, there were no structures on the property; that after their marriage, Leonora, Franklin, and John lived in San Saba, apparently on a different tract of property; that the three later moved to an apartment in Killeen; that Franklin and Leonora moved to Copperas Cove in 2004; that sometime between 2000 and 2004, "a sheet metal building with a shop and apartment was constructed on the San Saba Property"; and that John lived alone in the apartment "for a period of time in 2004." Leonora does not dispute appellants' statement of facts or cite to the reporter's record at all other than to support her assertion that she paid the property taxes and had leased the property to a third-party, and we therefore "will accept as true" appellants' version of the facts. *See* Tex. R. App. P. 38.1(g); *Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006).

[2] Although appellants state that the trial court made findings of fact and conclusions of law, the document they cite to was their proposed findings and conclusions, attached to their request for findings and conclusions, and the trial court clerk's office has informed us that their records do not include any signed findings of fact and conclusions of law. The record does not reflect that appellants filed a notice of past due findings and conclusions. *See* Tex. R. Civ. P. 297; *Coven v.*

**Discussion**

Appellants argue that the trial court erred in interpreting the will to give Leonora a life estate in the San Saba property regardless of the fact that she does not live there. We agree. The construction advocated by Leonora and applied by the trial court essentially negates Franklin's intended grant of a life estate conditional on Leonora's "occupancy" of the property, instead giving her a life estate no matter the use she makes of the property, and runs afoul of the rules of construction that courts must apply when construing wills.

In construing a will, a court must attempt to ascertain the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). In determining the testator's intent, courts should carefully examine the words chosen and may not go beyond the four corners of the will unless the will is ambiguous. *Id.* ("when there is no dispute about the meaning of words used in a

---

*Dailey*, 652 S.W.2d 527, 528 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (party waives error in failure to file findings and conclusions if it does not bring matter to trial court's attention). When a trial court does not issue findings of fact and conclusions of law, we imply all necessary fact findings. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We review determinations of law de novo. *Gulf Chem. & Metallurgical Corp. v. Hegar*, 460 S.W.3d 743, 747 (Tex. App.—Austin 2015, no pet.).

The clerk's record does contain an email from the trial court to the parties, in which the court cited to the standards applied in construing a will, quoted the relevant provision from Franklin's will, discussed the pleadings and testimony, and asked Leonora's attorney to draft an order stating that Leonora had a life estate in the San Saba property, stating that, since Franklin "obviously knew that Leonora Brown never 'occupied' the San Saba property in the true sense of the word" when he wrote his will, he "intended to create a life estate" for her in the property. "Although such pre-judgment letters do not control the standard or scope of our appellate review, *see Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex. App.—Austin 1997, pet. denied), we nonetheless acknowledge that the [trial] court's statements are consistent with its subsequent judgment." *Hanson Aggregates W., Inc. v. Ford*, 338 S.W.3d 39, 43 n.5 (Tex. App.—Austin 2011, pet. denied).

will, extrinsic evidence will not be received to show that the testatrix intended something outside of the words used"). Courts "should focus not on 'what the [testator] intended to write, but the meaning of the words [he] actually used.'" *Id.* (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). A court may not "redraft wills to vary or add provisions 'under the guise of construction of the language of the will' to reach a presumed intent." *Id*. (quoting *Stahl*, 610 S.W.2d at 151). And, importantly, "extrinsic evidence *may not be used to create an ambiguity* in a will when the words used are unambiguous." *Id*. at 640 (emphasis added). We must give words their "normal meaning." *Barker v. Rosenthal*, 875 S.W.2d 779, 781 (Tex. App.—Houston [1st Dist.] 1994, no writ). In other words, "[c]ommon words should be given their plain meaning unless the context indicates the words were used in another sense." *Patrick v. Patrick*, 182 S.W.3d 433, 436 (Tex. App.—Austin 2005, no pet.).

Franklin twice emphasized the conditional nature of the life estate he granted to Leonora, saying she had a right to the property "for and during her natural life *or until such time as she shall fail to occupy*" the property and reiterating that it would pass to appellants if Leonora died before Franklin "*or cease[d] to occupy* said property." (Emphasis added.) Had Franklin intended to grant Leonora a simple life estate, there would have been no need to include the "occupy" condition. The condition imposed by Franklin must mean something and must, therefore, be given effect by our interpretation of the will. *See Lang*, 35 S.W.3d at 639. We turn then to the plain meaning of "occupy," the word chosen by Franklin. In considering the meaning to be given the condition, we must look to the "normal meaning" of the word "occupy." *See Patrick*, 182 S.W.3d at 436.

4

The common definition of "occupy," as can be applied to real property, is "to live in" or "to reside in as an owner or tenant." Merriam-Webster.com, accessed August 23, 2016, http://www.merriam-webster.com/dictionary/occupy.[3] In a legal context, an "occupant" is generally the person who is actually present and living on the property. *See, e.g.*, Tex. Prop. Code § 92.001(6) (defining "tenant" as person "authorized by a lease to occupy a dwelling to the exclusion of others"); *Liberty Mut. Fire Ins. Co. v. Lexington Ins. Co.*, 446 S.W.3d 835, 841-44 (Tex. App.—San Antonio 2014, no pet.) (discussing meaning of "occupy" in insurance context, analyzing competing definitions, and concluding that "occupy comprises (1) a *continued physical presence* on the premises, and (2) control of the premises for the insured's own benefit" (emphasis added)); *BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 303 (Tex. App.—Houston [14th Dist.] 2015, pet. filed) (discussing meaning of "rent" and concluding that "the plain, ordinary, and generally accepted meaning of 'rent payments' is something paid to a landlord or owner *in exchange for the right to use, occupy, or possess real or personal property*" (emphasis added)).[4]

---

[3] *See* Webster's Third New International Dictionary 1561 (2002) ("to take up residence in : to settle in," "to reside in as an owner or tenant"); Compact Oxford English Dictionary 1198 (2d ed. 1989) ("[t]o reside in and use (a place) as its tenant or regular inhabitant"); *see also* Black's Law Dictionary 1184 (9th ed. 2009) ("occupancy" is "[t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, esp. of a dwelling or land").

[4] *See also Brown v. Johnson*, 12 S.W.2d 543, 545 (Tex. 1929) (to create landlord-tenant relationship, it must be "the intention of one party to dispossess himself of the premises and of the other to occupy them"); *Andrus v. Davis*, 89 S.W. 772, 772 (Tex. 1905) (discussing statute that allowed for "forfeiture for nonoccupancy" and stating, "This we take to mean that the character of settlement and occupancy required of a purchaser in the first place, viz., an actual residence or occupancy, rather than a virtual or constructive one, must be continuous for the prescribed term of three years.").

Leonora argues that the trial court "clearly interpreted the common meaning of the word 'occupy' to include the life tenant's use and enjoyment of the property for its income potential and her use during her lifetime," but points to nothing supporting that so-called "common meaning." The trial court impliedly concluded that the will was ambiguous, a question of law that we review de novo, *see Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied), when it looked to extrinsic evidence rather than confining its analysis to the four corners of the will. In doing so, the court overlooked the fact that the will's language is unambiguous as applied to the current undisputed circumstances—that Leonora had long lived in Copperas Cove, not San Saba, that she had rented the San Saba property to a tenant, and that she had no intention of living on the San Saba property—and created an ambiguity through consideration of the facts as they previously existed. Extrinsic evidence, however, may not be used to create an ambiguity in a will when the words used are unambiguous. *Lang*, 35 S.W.3d at 640.

To the degree that "occupy" might include periodic or weekend use, as Leonora testified she and Franklin once used the property, that might have been arguable in the past.[5] However, Leonora clearly relinquished such use when she rented the property to her tenant, who now occupies the property. We have found no definition or use of the word "occupy" that would

---

[5] We do not hold that a person can never "occupy" a property by holding it in reserve for weekend use, as a second residence, or the like. But under these facts, Leonora is clearly not meeting the condition placed by Franklin on her continued assertion of a property interest. *See Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016) ("Fundamentally, '[t]here are many rules of law surrounding the construction of a will but there is one over-all rule, which is to the effect that there is no set rule that will fit the construction of every will, and therefore each case must stand under its own facts.'" (quoting *Taylor v. First Nat'l Bank of Wichita Falls*, 207 S.W.2d 428, 431 (Tex. Civ. App.—Fort Worth 1948, no writ)).

include Leonora's current use of the property,[6] and its inclusion would erase the condition placed

by Franklin on his grant of a life estate, instead transforming Leonora's interest into an unconditional

life estate. Based on the common definition of "occupy," we agree with appellants that the language

of Franklin's will related to the San Saba property was unambiguous as applied to the undisputed

facts and meant that Leonora's retention of a life-estate interest in the property depended on her

physical residence or possession of the property.[7]

---

[6] The dissent urges a broader definition of "occupancy" that goes far beyond the plain meaning given to the word in common use, *see Patrick v. Patrick*, 182 S.W.3d 433, 436 (Tex. App.—Austin 2005, no pet.), and which would render Franklin's condition meaningless, essentially granting Leonora a life estate unless she utterly abandoned the property. The dissent cites to *Hernandez v. Heldenfels*, 374 S.W.2d 196, 198-99 (Tex. 1963), as "discussing the 'occupancy' of roadway by a subcontractor while rebuilding the road." Slip op. at 5 n.12. In discussing the duty owed by the subcontractor to an employee, the supreme court noted that an "occupier of land . . . may not be an owner but is entitled to exclusive control thereof" and distinguished between the landowner and the occupying subcontractor. 374 S.W.2d at 197, 198-99. We thus believe that *Hernandez* supports our conclusion in this case, in which Leonora has ceded control of the premises to a tenant.

Similarly, *Dawson v. Tumlinson*, cited by the dissent, slip op. at 5 n.14, for the proposition that adverse possession "need not be by actual individual occupancy" and can be through a claimant's tenant, generally discussed "occupancy" in terms of who is physically present in and living on the land. 242 S.W.2d 191, 194-95 (Tex. 1951). The supreme court agreed with the conclusions of the court of civil appeals that the evidence raised issues of whether the claimant's parents "began occupying the property through their tenants" and whether "the occupancy by the tenants was adverse possession." *Id.* at 195. However, "occupancy," meaning the property's use as a residence by a series of tenants in *Dawson*, is throughout the opinion clearly distinguished from "possession," which the court explained can be through a tenant as occupant of the property. *See id.* at 194-96.

The word "occupy" in *Hernandez* and *Dawson* is in both cases given a highly technical and specific usage that does not match the "normal meaning" given to this common word in every day usage. *See Patrick*, 182 S.W.3d at 436.

[7] Contrary to Leonora's contention, the rule that a will should be construed to favor the first taker, *see Singleton v. Donalson*, 117 S.W.3d 516, 518 (Tex. App.—Beaumont 2003, pet. denied) (when "will contains a provision that upon a certain contingency an estate given to one shall pass to another, the law favors the first taker," and "testator's language should be construed so as to grant

**Conclusion**

Under the unambiguous terms of Franklin's will, Leonora's retention of a life estate in the San Saba property required her to "occupy" the property. Having looked to the usual meaning given to the word "occupy," *see Patrick*, 182 S.W.3d at 436, we hold that her renting of the property to a third-party, thereby relinquishing both physical possession and actual control of the property for the express purpose of supplementing her income and with no intent to ever reside on the land herself, does not satisfy that condition. Therefore, the trial court erred in granting Leonora an unconditional life estate in the San Saba property. We reverse the trial court's order and render judgment that the San Saba property belongs to appellants in fee simple.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton
    Dissenting Opinion by Justice Pemberton

Reversed and Rendered

Filed:   August 25, 2016

---

to the first taker the greatest estate which, by fair construction, the will is capable of passing"), does not apply here, where there is no ambiguity in the language used by Franklin.