

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00005-CV

**ESTATE OF** Francisco **RODRIGUEZ**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2015PC0654-A
Honorable Tom Rickhoff, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 10, 2018

AFFIRMED

This appeal stems from a lawsuit against Frank Rodriguez, in his capacity as independent executor and trustee of a testamentary trust created by the Last Will and Testament (the "Will") of Francisco Rodriguez.  The lawsuit was brought by Appellant Blanca Rodriguez to enjoin the sale of real property owned by Francisco at the time of his death which Frank contracted to sell to Appellee Chris Christians.  Christians intervened in the lawsuit asserting the language in the Will expressly gave Frank[1] the power to sell the property.  Blanca, as a beneficiary of the estate and trust, contends that language in the trust created a right of first refusal in favor of the trust beneficiaries.  Christians and Blanca filed competing motions for summary judgment.  The trial

---

[1] For purposes of this opinion, and in an attempt to alleviate confusion between the multiple individuals with similar surnames, we refer to Francisco Rodriguez, Blanca Rodriguez, and Frank Rodriguez by their first names.

court: (1) denied Blanca's motion; (2) granted Christians's motion; (3) severed all claims and issues by and between Frank or Blanca and Christians;[2] and (4) ordered Frank to convey the property to Christians. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Francisco Rodriguez died in February 2015 leaving his Will, which generally benefitted his four children and Blanca, his daughter-in-law. Francisco designated his son, Frank, as independent executor of the Will and as trustee of the testamentary trust created by the Will.

The Will was probated, and Frank qualified as independent executor of the estate and trustee of the trust. The real property located in Von Ormy, Texas which is referred to as the "Ranch" was the primary property in Francisco's residuary estate. The Will devised the residuary estate to a trust. Blanca, Frank, and two of Francisco's other children were the beneficiaries of the trust.

In her lawsuit, Blanca alleged that when Frank decided to sell the Ranch, he told family members they would be given an opportunity to match any offer he received. After Frank listed the Ranch for sale, Blanca made various offers to purchase it, including a March 2016 offer for $240,000.00. Despite these offers, on May 20, 2016, Frank entered into a contract, on behalf of the Francisco Rodriguez Estate, to sell the Ranch to Christians for $259,900.00. Upon learning about Christians's offer, Blanca made another offer to purchase the Ranch for $265,000.00.[3] When Frank refused to accept Blanca's offer, Blanca filed the underlying lawsuit seeking a temporary restraining order and injunction to prevent Frank from conveying the Ranch to Christians. In her

---

[2] The claims between Blanca and Frank remain pending in the original lawsuit.
[3] We note Blanca's offer consisted of a $130,000.00 loan in the name of her daughter, Lisa Rodriguez, to purchase Frank's interest and that of his sister, Cynthia Rocha. The third beneficiary, Mary Ann Garay, agreed to allow Blanca to acquire her interest on an owner-finance basis.

pleadings, Blanca alleged the contract between Frank and Christians violated a right of first refusal contained in the trust in favor of the trust beneficiaries.[4]

Christians intervened in the suit seeking specific performance of the contract to purchase the Ranch. Blanca and Christians filed competing summary judgment motions pertaining to whether Frank had the authority to sell the Ranch and whether the trust contained a right of first refusal in favor of the trust's beneficiaries. After hearing the arguments on the competing summary judgment motions, the trial court denied Blanca's summary judgment motion in its entirety, granted Christians' summary judgment motion, and ordered Frank to perform his obligations under the contract. The trial court severed all claims and issues by and between Frank or Blanca and Christians into a new cause.

On appeal, Blanca contends the trust's language created a right of first refusal in favor of the trust beneficiaries. Christians counters Frank acted within the powers given under the Will as independent executor and trustee of the trust. More specifically, Christians contends Frank was given the express power to sell the Ranch and the trust's language did not create a right of first refusal in favor of the trust beneficiaries.

## A. Standard of Review

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *see also Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). An appellate court generally reviews a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the parties filed competing motions for summary judgment, and the trial court granted Christians's

---

[4] Blanca also alleged fraud and breach of fiduciary duty claims against Frank; however, those claims remain pending in the original lawsuit.

motion and denied Blanca's motion, we "determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

**B. Terms of the Will and Trust**

We begin our analysis by examining the specific terms of the Will and the trust created by the Will.

*1. Disposition of Estate (Section III and V)*

Francisco's estate was comprised primarily of two pieces of real property: (1) the 327 Cass House and (2) the Ranch. The 327 Cass House was devised and bequeathed to Francisco's daughter, Debra Ann Hernandez. Under Section III.D of the Will, the "rest of [Francisco's] estate interest" was devised and bequeathed to Frank's other three children, "Mary Ann Garay, Frank Rodriguez, Cynthia Rocha," and to his daughter-in-law Blanca "in equal shares; to be held in trust." To effectuate this provision, the Will devised Francisco's "residuary estate" to his trustee under the terms of the trust created by the Will. Although the Will listed only four beneficiaries of the trust, Section III.C of the Will devised a "1/5 interest, less $60,000 (the value of the 327 Cass House)" to Debra Ann Hernandez "if the trust sells my ranch that is part of the trust set out herein."

*2. Powers of the Executor (Section IX)*

The Will gave Frank specific power as independent executor to sell the property of the estate as follows:

> A. I hereby grant unto my Independent Executor or any successor named above, full power and authority over any and all of my estate and they are hereby authorized to sell, manage, and dispose of the same or any part thereof, and in connection with any such sale or transaction, make, execute and deliver proper deeds, assignment or other written instruments and to do any and all things proper or necessary in the orderly handling and management of my estate.
> ***

C.  My Independent Executor or any successor named above, shall have full power and authority to deal with any person, firm or corporation including any trusts or trust estate created by this, my Last Will and Testament.

*3.  Powers of Trustee (Section V and VII)*

The trust also gave Frank specific power as trustee to sell the corpus of the trust as follows:

[V] B.  My Trustee can sell the corpus of this Trust, but it [is] my desire my ranch stay intact as long as it is reasonable. If the corpus is sold it shall be distributed as set out in Section III, C and D.

\*\*\*

[VII] A.  The Trustee during the continuation of each trust shall have the sole and complete right to possess, control, manage, and dispose of each trust estate and the said Trustee shall have the powers, rights, responsibilities and duties given to or imposed upon by trustees by the Texas Trust Code as such Code now exists.

## C.  Construction of Wills and Trusts

"The same rules of construction apply to both wills and trusts." *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied); *see also San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) (construction of will).  The construction of an unambiguous trust instrument is a question of law for the trial court.  *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  In interpreting a will or a trust, an appellate court's focus is on the maker's intent.  *See Lang*, 35 S.W.3d at 639; *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied); *Hurley*, 98 S.W.3d at 310.  An appellate court ascertains such intent from the language used within the four corners of the instrument.  *See Lang*, 35 S.W.3d 636; *Eckels*, 111 S.W.3d at 694 (explaining the will "speaks for itself"); *see also Shriner's Hosp. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980) (applying four-corners rule to construe a will).

An appellate court may not focus its attention on what the testator "'intended to write, but [on] the meaning of the words [he] actually used.'"  *Lang*, 35 S.W.3d at 639 (quoting *Stahl*, 610 S.W.2d at 151).  That is, we must not redraft a trust instrument to vary or add provisions "under

the guise of construction of the language of the [trust]' to reach a presumed intent." *Id*. (quoting *Stahl*, 610 S.W.2d at 151); *accord Frost Nat'l Bank v. Newton*, 554 S.W.2d 149, 153 (Tex. 1977) ("No speculation or conjecture regarding the intent of the testatrix is permissible where, as here, the will is unambiguous, and we must construe the will based on the express language used therein.").

This court must harmonize all terms to give proper effect to each part of the instrument; in construing the instrument, we must give effect to all provisions and ensure that no provisions are rendered meaningless. *See Eckels*, 111 S.W.3d at 694; *Myrick v. Moody*, 802 S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Provided the language of the instrument unambiguously expresses the settlor's intent, there is no need to construe the instrument because "it speaks for itself." *Ellison Grandchildren Trust*, 261 S.W.3d at 117; *see Keisling v. Landrum*, 218 S.W.3d 737, 741 (Tex. App.—Fort Worth 2007, pet. denied) (stating and applying rule that when unambiguous language in a trust instrument expresses the settlor's intent, construing the instrument is not necessary because it speaks for itself).

## D.     Precatory or Mandatory Language

Blanca argues the language stating Francisco's desire that "my ranch stay intact as long as it is reasonable" is mandatory, rather than precatory; and, the mandatory language grants the beneficiaries of the trust a right of first refusal to purchase the Ranch.

A court's analysis regarding whether particular words are precatory or mandatory turns on "the testator's expressed intent as evidenced by the context of the will and surrounding circumstances, 'and words which are precatory in their ordinary meaning will nevertheless be construed as mandatory when it is evident that such was the testator's intent.'" *In re Estate of Abshire*, No. 02-10-00060-CV, 2011 WL 3671998, at *4 (Tex. App.—Fort Worth, pet. denied) (mem. op.) (quoting *Wattenburger v. Morris*, 436 S.W.2d 234, 239 (Tex. Civ. App.—Fort Worth

1968, writ ref'd n.r.e.)). Generally, courts construe words akin to "want," "wish," "request," and "desire" as precatory in their ordinary sense and not as imposing a legal obligation. *Id*.; *see Bergin v. Bergin*, 315 S.W.2d 943, 947 (Tex. 1958) (recognizing that "[i]t is my desire" is usually precatory language but can be changed to mandatory by the will's context); *Thomasson v. Kirk*, 859 S.W.2d 493, 495 (Tex. App.—Houston [14th Dist.] 1993, writ denied). These same words, however, become mandatory "'when used in a will where it appears from the context or from the entire document that they are the expression of the testator's intention in disposing of his property.'" *Estate of Abshire*, 2011 WL 3671998, at *4 (quoting *First United Methodist Church of Marlin v. Allen*, 557 S.W.2d 175, 177 (Tex. Civ. App.—Waco 1977, writ ref'd n.r.e.)).

In determining whether Francisco's "desire" to have the Ranch stay intact was precatory or mandatory, we must examine this desire in the context of the express powers given Frank as trustee. As previously noted, the language granting Frank the power to sell the trust estate uses mandatory language and provides Frank "shall have the sole and complete power to . . . dispose of each trust estate." In addition, the trust provides Frank "can sell the corpus" and includes specific language regarding the distribution of the corpus in the event of such a sale by incorporating an additional bequest to Debra Ann Hernandez "if the trust sells my ranch that is part of the trust set out herein." In view of the mandatory language used in granting Frank the power to sell the corpus of the trust, we hold the reference to Frank's "desire" to keep the Ranch intact is precatory language which did not impose any legal obligation preventing Frank from entering into the to sell the Ranch to Christians.

We next turn to Blanca's contention that the Will creates a right of first refusal in favor of each of the beneficiaries.

### E. Right of First Refusal

"[A] right of first refusal or preemptive right to purchase requires the owner of the subject property to offer the property first to the holder of the right on the same terms and conditions offered by [or to a bona fide purchaser.]" *City of Brownsville v. Golden Spread Elec. Co-op., Inc.*, 192 S.W.3d 876, 880 (Tex. App.—Dallas 2006, pet. denied); *accord Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 644 (Tex. 1996). If the owner desires to sell the property, and has an offer he would accept, he must first offer to the holder of the right an opportunity to buy the property on the terms offered by a bona fide purchaser. *See Tenneco, Inc.*, 925 S.W.2d at 644; *Comeaux v. Suderman*, 93 S.W.3d 215, 219 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Blanca argues Francisco's statements to others, in combination with two clauses contained within the Will, demonstrate his intent to create a right of first refusal for the beneficiaries under the trust. *See Lang*, 35 S.W.3d at 639; *Eckels*, 111 S.W.3d at 694. She contends "the Trust created by Section V of the will clearly evinces Francisco's intent that the trustee keep the Ranch in the family, and gives the beneficiaries the opportunity to buy out the other beneficiaries to accomplish that goal." More specifically, Blanca argues "the power of the trustee was limited by the right of the beneficiaries to buy it." Although Blanca makes reference to Francisco's statements to others, we remain mindful that our analysis is limited to the four corners of the document. *See Lang*, 35 S.W.3d 639; *Eckels*, 111 S.W.3d at 694.

The clauses upon which Blanca relies are as follows:

V. Trust, section B: "My Trustee can sell the corpus of this Trust, but it [is] my desire my ranch stay intact as long as it is reasonable."

V. Trust, section E: "If any of the four beneficiaries of his estate wants to sell their portion of the properties they can only sell it to the remaining beneficiaries."

Neither of the clauses, however, requires the *trustee* to offer to anyone, much less the beneficiaries, an opportunity to purchase the property on the same terms offered to another potential buyer.

Rather than imposing limitations on the trustee's power to sell, the second clause is designed to impose limitations on a beneficiary's power to sell, precluding a beneficiary from selling to anyone other than another beneficiary. No similar limitation is imposed on the trustee's power to sell.

We conclude that neither of the clauses on which Blanca relies nor the Will as a whole evidence an intent to limit Frank's power to sell by creating a right of first refusal in favor of the trust beneficiaries. *See Tenneco, Inc.*, 925 S.W.2d at 644; *Comeaux*, 93 S.W.3d at 219; *Ingrum v. Ingrum*, 520 S.W.2d 535, 537 (Tex. Civ. App.—San Antonio 1975, writ ref'd, n.r.e.) (explaining the phrase "authorizes and empowers the executor to dispose of, sell, or mortgage any property the decedent may die possessed of, as such executor may deem necessary" contains no limitations on when or how such sale may occur). Accordingly, Francisco's Will did not limit Frank's authority to sell the property as he deemed necessary and under the provisions he deemed reasonable.

## OTHER ISSUES

Blanca also contends the competent summary judgment proof created fact questions as to whether Frank defrauded the beneficiaries or breached his fiduciary duties in entering into the contract with Christians. However, because the trial court did not sever the claims between Frank and Blanca, those claims remain pending in the original lawsuit. As a result, we do not have jurisdiction to address any of Blanca's issues with respect to Frank because this appeal is from the trial court's judgment disposing of the claims between Frank or Blanca and Christians.

Finally, Blanca asserts that Christians failed to obtain a copy of the trust or the Will, and thus failed to inquire into the extent of the trustee's powers or the propriety of the exercise of those powers. In other words, Blanca contends that because Christians failed to perform his due diligence or his duty to inquire, any conveyance under the Will or trust was encumbered by the beneficiaries' right of first refusal. Because we have concluded the trust did not create a right of

first refusal in favor of the trust beneficiaries, any failure by Christians to determine the extent of the trustee's powers did not encumber the conveyance with a right of first refusal in favor of the trust beneficiaries. Therefore, we need not further address Blanca's complaint. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

Because Francisco's "desire" to keep the Ranch intact was precatory language, the language did not prevent Frank from entering into a contract to sell Christians the Ranch. Additionally, neither Francisco's Will nor the testamentary trust created by the Will contains a right of first refusal in favor of the beneficiaries that limits Frank's authority to sell the Ranch. Accordingly, the trial court's judgment is affirmed.

Patricia O. Alvarez, Justice