# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00257-CV[1]

**In the Matter of the Estate of Vaughn Kuyamjian, a/k/a Vahan Kuyamjian**

### FROM COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 16-0085-P, HONORABLE DAVID GLICKLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Deborah Lloyd Kuyamjian appeals the trial court's final judgment denying her motion for summary judgment on her declaratory-judgment claim and rendering judgment that certain real property was removed from the Vahan Kuyamjian Revocable Trust (the Trust) and is part of the probate estate of Vahan Kuyamjian (Decedent) and should pass according to his probated will. The issue before us is whether a will that bequeaths real property that is held in a revocable trust functions to revoke that trust or remove the real property from it when the will does not mention the trust or expressly revoke it. For the following reasons, we will reverse the trial court's judgment and render judgment that the real property at issue remained an asset of the Trust upon Decedent's death,

---

[1] The notice of appeal in this case was originally filed in this Court on September 8, 2016. The Supreme Court of Texas ordered the case transferred to the Eighth Court of Appeals, pursuant to its docket-equalization authority. *See* Tex. Gov't Code § 73.001; Misc. Docket No. 16-9040. This Court transferred the case to our sister court on September 28, 2016. On April 12, 2018, the Supreme Court of Texas ordered this case—along with 38 other cases that had also been previously transferred to the Eighth Court but had not reached final disposition—transferred back to this Court. *See* Misc. Docket No. 18-9054. The Eighth Court of Appeals transferred the case back to this Court on April 16, 2018.

is not an asset of Decedent's probate estate, and was properly distributed pursuant to the terms of the Trust.

## BACKGROUND[2]

Appellant is the sister-in-law of Decedent. Appellees are four neighbors (the Neighbors) of Decedent. In 2011 Decedent (a) created the Trust to hold his real property and financial and other valuable assets during his life and to dispose of them at death "outside of the probate process" and (b) deeded his interest in his home in southwest Austin (the Residence) to the Trust. At the time the Trust was created, the Decedent was not married, did not have children, and lived with his brother, Gerard Kuyamjian (Gerard) in the Residence. Gerard also created his own revocable trust in 2011, such that Gerard and Decedent left all of their assets to each other upon their respective deaths, with designated charities as the contingent beneficiaries. Upon Gerard's death in 2012, and pursuant to the terms of his revocable trust, his interest in the residence was conveyed to the Trust so that 100% of the Residence was then titled in the name of the Trust.

In 2013 Decedent amended his Trust agreement to update the beneficiaries to provide that, upon his death, everything was to pass to his other brother, Stephen G. Kuyamjian (Stephen), or if he were then not living, to Appellant (Stephen's wife). Stephen died in 2015, leaving Appellant as the sole beneficiary and successor trustee of the Trust. The Trust agreement provided that "While trustor [i.e., Decedent] is living, trustor shall have the right to alter, amend or revoke the [] Trust or this trust agreement, in whole or in part, by written instrument signed by trustor and delivered to the trustee [i.e., Decedent] or withdraw all or any part of the trust estate of the [] Trust."

---

[2] The facts in this section are taken from the trial court's unchallenged findings of fact.

2

On February 20, 2016, Decedent—while in the hospital—executed a handwritten will (the February 20 Will) that read, in its entirety:

> I, Vahan Kuyamjian, being of sound mind and body hereby rescind all previous wills.
>
> This document is my complete and total will.
>
> On this 20th day of February, 2016, I hereby bequeath my [Residence] to [Neighbors] Amy Dukes, Randy Dukes, Shari Bligh, and James Bligh.
>
> I designate Mr. James Bligh as the executor of my estate.
>
> The Fidelity Individual account . . . is to be bequeathed in equal parts to Nancy Hammond Wixted and [Appellant].
>
> The Wells Fargo account is bequeathed to [Appellant].
>
> The Bank Vontobel, Zurich, Switzerland account is bequeathed according to the allocation scheme:
>
> 25% to [Appellant],
> 25% to Nancy Hammond Wixted,
> 25% to James and Shari Bligh
> 25% to Randall and Amy Dukes.
>
> [Signed] Vahan Kuyamjian

On February 22, 2016, Decedent executed a typewritten will with the assistance of an attorney. That will "revoke[d] all Wills and Codicils previously made by [Decedent]" and was admitted into probate after Decedent's death (the Probated Will). Among other provisions, the Probated Will left the Residence to the Neighbors: "I give all of my interest in the [Residence] at the time of my death to [the Neighbors] in equal shares." Neither of the wills makes any reference to or mention of the Trust. After Decedent's death, Appellant declared herself to be successor trustee of the Trust and executed a deed to transfer the Residence to herself individually.

3

While the administration of Decedent's estate was pending, the Neighbors filed a petition for declaratory judgment seeking a declaration that the Residence is part of Decedent's probate estate and that the Trust was revoked in its entirety by virtue of the two wills. Appellant, who had previously filed an opposition to the probate of Decedent's will and issuance of letters testamentary as a "person interested in the Decedent's estate," filed an original answer and counterclaim to the Neighbors' declaratory-judgment petition. Appellant's counterclaim sought judicial declarations that: the Residence is "outside of the probate estate"; the Trust was the "fee simple owner of the Residence as of the day of Decedent's death"; neither of Decedent's purported "[w]ills . . . operated as a revocation of the Trust"; Appellant (as trustee of the Trust) had the authority to convey the Residence to herself; and "the cloud on her title, if any, must be removed and . . . quieted."

The trial court denied the Neighbors' petition for declaratory judgment. Appellant then filed a motion for summary judgment on her declaratory-judgment counterclaims. After a hearing, the trial court denied Appellant's motion and rendered a final judgment that Decedent's Residence "is part of [Decedent's] probate estate and should pass according to his will dated February 22, 2016." Appellant appeals the denial of her summary-judgment motion.

## STANDARD OF REVIEW

Declaratory judgments are reviewed under the same standards applicable to other judgments; thus, the denial or grant of a declaratory judgment requested through a traditional motion for summary judgment, such as occurred here, is reviewed under traditional summary-judgment standards. Tex. Civ. Prac. & Rem. Code § 37.010; *Lidawi v. Progressive Cty. Mut. Ins.*

4

*Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We review a traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

We also review de novo the trial court's legal conclusions on the construction of wills and trusts. *See Gamboa v. Gamboa*, 383 S.W.3d 263, 273 (Tex. App.—San Antonio 2012, no pet.) (trusts); *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied) (wills). When we construe a will, we focus on the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). We ascertain the testator's intent from the language found within the four corners of the will. *Id.* The court focuses not on what the testator intended to write, but on the meaning of the words actually used. *Id.* In this light, courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent. *Id.* (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). We similarly ascertain a trust grantor's intent from the language contained in the trust's four corners and focus on the meaning of the words actually used, not what the grantor intended to write. *Soefje v. Jones*, 270 S.W.3d 617, 625 (Tex App.—San Antonio 2008, no pet.). We must interpret a trust to give meaning to all its provisions and to enact the intent of the grantor. *See Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In three related issues, Appellant contends that the trial court erred in determining that (1) the Trust was revoked by either or both of the wills; (2) the Residence was withdrawn from the Trust prior to the date of Decedent's death; and (3) the Residence is part of Decedent's probate estate and should pass according to the Probated Will. We agree with Appellant on all issues.

When a valid inter vivos revocable trust is not revoked during the lifetime of the trustor, it becomes irrevocable upon his death, terminates, and becomes enforceable by the beneficiary. *Jameson v. Bain*, 693 S.W.2d 676, 680 (Tex. App.—San Antonio 1985, no writ) (citing *Citizens Nat'l Bank of Breckenridge v. Allen*, 575 S.W.2d 654, 658 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.)). Significantly, neither of the wills (a) refers to the Trust, either explicitly or implicitly, or (b) uses the word "revoke" or any other word with similar meaning except with respect to prior wills. These facts alone distinguish this case from that cited by Appellees in which language contained in a will *expressly* revoked a trust. *See Sanderson v. Aubrey*, 472 S.W.2d 286, 287 (Tex. App.—Fort Worth 1971, writ ref'd n.r.e.) (holding that recital in will that inter vivos trust "is now formally revoked" became effective on date will was signed and "extinguished" trust so that real property formerly titled in trust "reverted" to trustor so that she could dispose of it by will); *cf. Jinkins v. Jinkins*, 522 S.W.3d 771, 782–83 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that where decedent's new will revoked prior wills but did not mention trust or attempt to revoke

---

**3** While this cause was pending at the Eighth Court of Appeals, that court raised the issue of Appellant's standing sua sponte and requested supplemental briefing from the parties on the issue. We conclude that any discussion of the standing issue is unwarranted because Appellant indisputably has standing. *See, e.g.*, Tex. Prop. Code § 115.011(a) (providing that any interested person may bring action concerning trust).

trust, decedent did not "manifest a clear intent to revoke the trust"); *Hildebrand v. Brim, Arnett & Robinett, P.C.*, No. 03-98-00656-CV, 1999 WL 603671, at *3–4 (Tex. App.—Austin Aug. 12, 1999, pet. denied) (not designated for publication) ("Key in determining whether a trust has been revoked is whether the instrument in question 'manifests' the intent to revoke." (citing *Runyan v. Mullins*, 864 S.W.2d 785, 789 (Tex. App.—Fort Worth 1993, writ denied)); *Jameson*, 693 S.W.2d at 681 (holding that because will "does not contain a definitive manifestation to revoke the inter vivos trust," said trust was not revoked but remained in force and became irrevocable upon decedent's death).

The Trust agreement here required revocation to be in writing and delivered to the trustee but did not further specify any particular revocation requirements. However, it is simply too great a stretch to conclude that the February 20 Will's recital, "I hereby bequeath my [Residence] to [the Neighbors]," operated as a revocation of the Trust; that recital does not mention the Trust and does not use any word resembling "revoke."[4] The only portion of the February 20 Will that uses any word with similar meaning to the word "revoke" is the first sentence, in which Decedent wrote, "I hereby rescind all previous wills." In that recital, as well, Decedent did not mention the Trust.

---

[4] The trial court found the will's use of the word "hereby" with respect to bequest of the Residence—and the absence of that word with respect to the bequests of other property—significant. However, "hereby" simply means "by this document," *see Hereby*, *Black's Law Dictionary* (9th ed. 2009); *Webster's Third New Int'l Dictionary* 1059 (2002), and we conclude that Decedent's use of the word in this context is not relevant to the analysis. To the contrary, Decedent's use of the word "bequeath" is significant. *See Bequeath*, *Black's Law Dictionary* (9th ed. 2009) (defining "bequeath" as "to give property (usu. personal property) by will"); *Will*, *Black's Law Dictionary* (9th ed. 2009) (defining "will" as "the legal expression of an individual's wishes about the disposition of his or her property after death"); *Webster's Third New Int'l Dictionary* 205 (2002) (defining "bequeath" as "to give or leave by will").

Nor did the recital in the Probated Will, "I give all of my interest in [the Residence] at the time of my death to [the Neighbors]," operate to revoke the Trust.[5] That recital unequivocally contemplates transfer of the Residence upon death; it does not have immediate effect. *See Gordon v. Gordon*, No. 11-14-00086-CV, 2016 WL 1274076, at *3–4 (Tex. App.—Eastland Mar. 31, 2016, pet. denied) (mem. op.) (holding that testator's recital in will that will "shall override any prior allocations described in trust documents" did not constitute revocation of trust because it was intended to take effect upon testator's death rather than be immediately operative). Like the February 20 Will, the Probated Will does not refer to the Trust in any capacity and does not use the word "revoke" or anything similar in the context of the Trust or Trust property. Additionally, the record contains no evidence of any other writing by Decedent revoking the Trust. We hold that the trial court erred in concluding that either or both of the wills operated to revoke the Trust.

The trial court additionally concluded that the above-recited language in the two wills evidenced Decedent's "present intent" to "withdraw the [R]esidence . . . from the . . . [T]rust by making an inconsistent disposition of th[e] property" and "operated *in praesenti*" to "alter or amend" the Trust so as to remove the Residence therefrom. *See Sanderson*, 472 S.W.2d at 288 (observing that "instrument such as the will under consideration might have a dual character, i.e. be testamentary in part, but operative In [sic] praesenti in other parts" and that will's recital that it revokes prior wills takes effect at time will is executed); *see also In praesenti*, *Black's Law*

---

[5] Decedent's bequest to the Neighbors of the Residence in the Probated Will was followed with this sentence: "If I do not own an interest in a residential homestead at the time of my death, then the provisions of this Section shall be disregarded."

*Dictionary* (9th ed. 2009) (defining "in praesenti" to mean "[a]t present; right now"). We hold that the trial court erred in these determinations as well.

While the Decedent may very well have possessed a "present intent" on February 20 or 22, 2016, to amend his Trust by removing the Residence therefrom, we cannot say that the language in the two wills gave any legal effect to such intent or that Decedent's written words clearly manifested that intent. *Cf. Soefje*, 270 S.W.3d at 629 (noting that, when trustor executes amendment to trust, in absence of express language in amendment revoking trust, amendment can revoke prior trust by implication when it disposes of particular property in manner inconsistent with trust's prior disposition of same property and that "[r]evocation by implication is disfavored"); *see also San Antonio Area Found.*, 35 S.W.3d at 639 (noting that courts will not rewrite wills to vary or add provisions to reach a "presumed intent"). As explained previously, the Trust agreement required amendment of the Trust to be in writing, but the only writings at issue here did not mention or refer to the Trust, much less to "amendment" or modification thereof. Again, the caselaw cited by Appellees in support of the trial court's conclusions is distinguishable from the circumstances here.

The line of cases addressing "inconsistent disposition" of trust property have concerned actual disposition of the property at issue itself by the trust grantor that—upon disposition— effectively revoked or modified the trust as to that property. *See Moon v. Lesikar*, 230 S.W.3d 800, 805 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that grantor's conveyance of stock shares previously owned by trust to third party revoked trust as to that asset); *Starcrest Trust v. Berry*, 926 S.W.2d 343, 353 (Tex. App.—Austin 1996, no writ) (holding that grantor's conveyance of trust's principal asset—real property—in form of deed of trust to secure grantor's personal loan

9

revoked trust as to that asset). In contrast, here we have no actual disposition of the Residence by Decedent—i.e., he did not convey it to anyone else or deed it back to himself from the Trust; he merely bequeathed it upon his death to the Neighbors. We decline to expand the "inconsistent disposition" line of cases in the manner advanced by Appellees to include circumstances beyond actual disposition of trust property. We hold that the trial court's conclusions that either or both of the wills "amended" the Trust by virtue of their "inconsistent disposition" and that Decedent's will operated to remove the Residence from the Trust were erroneous.

## CONCLUSION

We reverse the trial court's judgment and render judgment that Vahan Kuyamjian's home at 301 Heritage Drive, Austin, TX, 78737 is not part of Vahan Kuyamjian's probate estate and should not pass according to his probated will but, rather, was an asset of the Vahan Kuyamjian Revocable Trust upon Decedent's death and should pass according to the provisions of said Trust.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Rendered

Filed:   August 8, 2018

10